Appeals of **WINTHROP AMES,**  Docket No. 12.
  **OFFICE OF WINTHROP**  Docket No. 13.
   **AMES, INC.**

A taxpayer owning all of the stock of a corporation, not a personal service corporation, may not deduct under the Revenue Act of 1918, as losses sustained in the business or as debts ascertained to be worthless, advances made to such corporation in the amount of the losses actually sustained by the corporation during a year so long as the corporation has net assets from which recovery in part is possible.

Individual business expenses cleared through the books of a corporation are deductible on the part of the individual to whose business they relate.

Submitted October 2, 1924; decided November 17, 1924.

*Burton E. Eames, Esq.,* for the taxpayer.

*Arthur H. Deibert, Esq.,* and *J. A. Adams, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, TRAMMELL, TRUSSELL, and STERNHAGEN.

The above cases came on for hearing Thursday, October 2, 1924. The Commissioner moved to dismiss the case of the Office of Winthrop Ames, Inc., on the ground that there was no deficiency threatened to be assessed against the said corporation and no deficiency letter issued by the Commissioner to form the basis of an appeal under the provisions of section 274 of the Revenue Act of 1924. It appeared that the question sought to be raised in the appeal of the Office of Winthrop Ames, Inc., was whether the said corporation was a personal service corporation, on which point the Commissioner had ruled adversely, and whether therefore the taxpayer, Winthrop Ames, might deduct the losses of said corporation in his personal return. It further appearing that the petition of Winthrop Ames set forth all the facts and issues involving the assessment of a deficiency in his personal capacity and it appearing that no deficiency on account of income or excess-profits taxes was threatened to be assessed by the Commissioner against the Office of Winthrop Ames, Inc., the said case, Office of Winthrop Ames, Inc., Docket No. 13, was ordered dismissed.

### FINDINGS OF FACT.

1. Winthrop Ames, the taxpayer in this case, is and was during the years 1918 and 1919, and for many years theretofore, engaged in the business of producing plays. This business was conducted by Mr. Ames as an individual for approximately two years prior to 1912.

In the latter part of the year 1912 Mr. Ames had under consideration plans for the construction and operation of what subsequently became the Little Theater in New York City, and for the purpose of protecting himself against unlimited liability in the event of fire or other casualty in that theater, he caused the corporation, Office of Winthrop Ames, Inc., to be duly organized under the laws of the State of New York. The authorized capital stock of this corporation was $10,000, being divided into 100 shares of $100 par value each, of which stock only 10 shares were ever issued, 6 of these being issued in the name of Mr. Ames and 4 in the names of qualifying directors, Mr. Ames being at all times the actual owner of all the stock. From the date of organization of the corporation to and including a portion of the year 1922, in which year it was made a voluntary bankrupt on confession of a judgment in favor of Mr. Ames, the corporation was the medium through which the business of selecting and producing plays was carried on, its original purpose to operate as the owner of the Little Theater having been abandoned and a separate corporation formed for that purpose. All of the expenses connected with the business of producing plays and all of the income derived from it was accounted for upon the books of the corporation.

2. Throughout the period of its existence the validity of the corporate existence was never brought into question; the New York State franchise tax was regularly paid; a separate bank account was kept; its funds were disbursed on separate checks signed by duly authorized officers of the corporation; and there were maintained in its name regular offices and an office staff. The corporate by-laws required directors to be stockholders, but in fact the actual ownership of all shares of stock was at all times vested in Mr. Ames.

3. During all the years from the date of the organization of the corporation to and including the year 1920 the corporation sustained continuous losses; that is, the sums expended in the production of plays exceeded the revenue derived therefrom after due allowance was made at the close of each year for the costs of all plays in process of production and the ultimate financial results of which were not then ascertained. At the close of each year there was carried to the account of Mr. Winthrop Ames on the corporation books a charge in the amount of the estimated loss for that year, these estimated losses for the entire period totaling $500,429.95 and being for each of the said years as follows:

| | | | |
|---|---|---|---|
| Prior to 1913 | $27,818.06 | 1917 | $79,139.42 |
| 1913 | 46,598.22 | 1918 | 103,072.80 |
| 1914 | 88,256.95 | 1919 | 51,894.99 |
| 1915 | 33,868.89 | 1920 | 35,591.60 |
| 1916 | 34,189.02 | | |

4. In the year 1921 the corporation books showed a profit, and for 1922 and subsequent years the business as conducted by Mr. Ames has been profitable.

5. The corporation was financed in all of these undertakings by advances from Mr. Ames, these advances being credited to him on the books of the corporation as moneys loaned and he charging the corporation in his personal books for the sums advanced.

6. The entire management of the corporation and of its business of producing plays was solely in the control of Mr. Ames and

he was solely responsible for the business carried on by the corporation, personally directed its affairs, and his time was actively, continuously, and almost exclusively devoted to its affairs and to the business of play production.

7. On the personal books of Mr. Ames were recorded all of the advances to the Office of Winthrop Ames, Inc., and any credits returned to him on account of such advances. There was not charged off on the personal books at any time prior to 1922 any loss on account of the advances so made. The entire total net amount so advanced remained an open account upon these personal books throughout the period of the life of the corporation and up to the time when it was declared a voluntary bankrupt, at which time the amounts advanced totaled $719,223.68. At all times prior to 1922, Mr. Ames expected the corporation ultimately to become profitable.

8. In and for the years 1918 and 1919 Winthrop Ames in his personal returns claimed as deductions on acount of bad debts the sums of $103,072.80 and $51,894.99, these being the sums shown as losses of each of the said years on the books of Office of Winthrop Ames, Inc. Upon the disallowance of these deductions by the Commissioner and his notification to the taxpayer of the determination of deficiency taxes in the sums of $54,684.56 and $21,422.97, arising as the result of the said disallowance, the taxpayer brings this appeal.

### DECISION.

The Board determines that the corporation, Office of Winthrop Ames, Inc., was not during the taxable years 1918 and 1919 a personal service corporation; that Winthrop Ames did not during the said years sustain deductible losses in the sums of $103,072.80 and $51,894.99, respectively, either as debts ascertained to be worthless and charged off during the taxable year or on any other ground; and that during the said years losses or expenses incurred in connection with the Little Theater were, while the said theater was personally owned by Winthrop Ames, allowable deductions in computing net income. From the evidence submitted, the Board is unable to determine the amount of the deficiency. Final decision of the Board will be settled on consent or on seven days' notice.

### OPINION.

JAMES: The taxpayer in his appeal relies upon the following propositions:

1. That the corporation, Office of Winthrop Ames, Inc., had no legal existence by reason of the fact that two directors were not in fact owners of capital stock of the corporation;

2. That the corporation, if legally organized, was in fact dormant during the years in question and was merely a name through which Winthrop Ames carried on his business of producing plays;

3. That Winthrop Ames by the manner in which the affairs of the corporation were conducted and through his constant assumption of the liabilities of the corporation made himself a guarantor of its accounts and when paid, its accounts were in effect his personal obligations and the losses sustained were his personal losses;

4. That the Office of Winthrop Ames, Inc., was a personal service corporation and its losses were annually deductible in the personal returns of Winthrop Ames;

5. That the amounts deducted on the returns of Winthrop Ames were debts ascertained to be worthless and charged off within the taxable years in question, due from the office of Winthrop Ames, Inc., and were proper deductions in and for the said years.

The first two of the above points may be considered briefly together. It is undisputed that the corporation was legally organized; that it possessed a charter lawfully issued by the State of New York; that its corporate existence was never questioned by the State of New York; that it paid its franchise taxes regularly throughout the period of its existence; that from the moment of its organization separate books of account were kept of its transactions; that it was treated as a separate entity by Winthrop Ames in his personal books, all of the advances to it being charged on the personal books to the Office of Winthrop Ames, Inc.; that it paid the expenses of the business of producing plays from its own earnings and from the advances received from Mr. Ames; that it had its own separate bank account; that its checks were separate and distinct from the personal checks of Winthrop Ames; that it maintained regular offices, a regular office staff being paid by it in the same manner as all of its other bills were paid; and that finally it was wound up as a voluntary bankrupt under the ordinary processes of bankruptcy law. Such a corporation manifestly had an initial existence, and whatever the irregularity in the manner of conducting its affairs with respect to the election and qualification of directors, neither the corporation nor its principal stockholder can now be heard to deny the regularity of its creation or the legality or regularity of its acts.

The courts have many times held that corporate entities may not be disregarded or confused with their stockholders. *Houston Belt & Terminal Railway Co.* v. *United States*, 250 Fed. 1; *Eisner* v. *Macomber*, 252 U. S. 189. This is also the rule in New York, *People ex rel. Waclark Realty Co.* v. *Williams, Comptroller*, 198 N. Y. 54; 91 N. E. 266.

The corporation was not dormant. It carried on an active business involving, as above set forth in the findings of fact, the advances to it over a period of 10 years of $719,223.68, and the expenditure of that large sum of money, together with all its earnings in the carrying on of its business. To a certain extent the corporation was unquestionably merged, at least in the mind of its creator, with his personal activity as a producer of plays. It was a creature which he called into being and utilized to carry on that business, and being the creator, the actual head, and the mind directing the business, it was only natural that he should not distinguish clearly, if at all, between the corporation as such and himself. He characterized the continued carrying on of the business through the medium of the corporation as a " bad habit ", but it was, in fact, a thoroughly stable and consistent habit. At all times the corporation conducted the business of producing plays, and at no time subsequent to its incorporation was the business of producing plays, so far as disclosed by the evidence, carried on by Winthrop Ames as an individual. No expenses connected with the producing of plays, so far as disclosed by the evidence, were ever paid by Winthrop Ames individually, other than

through the advances which he made from time to time to the corporation and charged to the corporation upon his personal books.

Nor is the taxpayer's fourth position sound. The evidence again is to the effect that the sums necessary to meet the expenses of the business of play production carried on by the corporation were advanced by Mr. Ames not to the creditors but to the corporation, by which in turn the creditors were paid. Winthrop Ames charged the advances on his personal books to an account headed " Theatrical Dramatic Investment ". He made himself a creditor of the corporation. To it, he himself testified, he looked for reimbursement.

Was the Office of Winthrop Ames, Inc., a personal service corporation?

Section 200 of the Revenue Act of 1918 requires, in order that a corporation may qualify as a personal service corporation:

1. That its income shall " be ascribed primarily to the activities of the principal owners or stockholders ";

2. That the stockholders shall be " themselves regularly engaged in the active conduct of the affairs of the corporation "; and

3. That capital (whether invested or borrowed) shall not be " a material income-producing factor ".

Of the above three material requirements in the instant case, the Office of Winthrop Ames, Inc., satisfies, we believe, the first two. Winthrop Ames was the sole stockholder of the corporation. Its income certainly is to be ascribed primarily to his activities. He was regularly engaged in the active conduct of its affairs. On these points the corporation satisfies the requirements of the statute. But it appears to us equally clear that capital borrowed from Winthrop Ames was a material income-producing factor. The taxpayer submitted much evidence on the amount of capital required to produce a play and showed that the expenses which preceded the first production in the theater did not as to any particular play ordinarily exceed a few thousand dollars. Upon this evidence he endeavored to prove that capital was not a material income-producing factor. But the business of the Office of Winthrop Ames, Inc., was not the producing of a play or rather the placing of a play in a position to be produced in a theater, but was the producing of plays. If a play was unsuccessful and involved the assuming of losses incident to the continuance of the pay roll of a production in the face of unfavorable receipts at the box office, the corporation nevertheless continued and the capital required for that purpose was a large and very material factor, not only in keeping that particular play alive but in keeping alive the going business itself. The business of producing plays was made successful in the end only by reason of the large sums so advanced and continued over a period of 10 years. Mr. Ames testified that he could not have continued in business long had such payments not been made. The capital so advanced totaled $719,223.68. This was the capital loaned to and employed by the corporation over the entire period of its existence after full allowance had been made for all repayments. It can hardly be said of a business requiring such a sum to bring it to the point of producing net income that it is one in which " capital (whether invested or borrowed) is not a material income-producing factor ".

Lastly, it is claimed that the sums deducted by Mr. Ames in his personal returns, $103,072.80 for 1918, and $51,894.99 for 1919, were

" debts ascertained to be worthless and charged off within the taxable year ".

To constitute allowable deductions the above amounts must meet two tests: (1) that they were charged off during the taxable year and (2) that they represented debts ascertained to be worthless.

It is in evidence and found to be a fact that these sums were the amounts determined by the books of Office of Winthrop Ames, Inc., as the losses of the years in question *of the corporation* and were *on the books of the corporation* charged to the account carried on those books as " Winthrop Ames Special ". In ordinary accounting the losses of a year would be charged, and until the close of the year 1917 the annual losses of this corporation were charged through the profit and loss account, to surplus, creating, in the case of losses in excess of profits, a debit balance or a " red " balance in that account.

Here there appears not to have been a surplus account and the profit and loss debit balance was charged to Mr. Ames' personal account. It is also in evidence and found as a fact that Mr. Ames kept personal books on which his advances to the corporation were charged to an account headed " Theatrical Dramatic Investment ", and that no part of such advances were ever charged off prior to the dissolution of the corporation.

To be charged off as a debt within the meaning of the statute, the entry must be made on the books of the taxpayer claiming the deduction. If Winthrop Ames, creditor, and Office of Winthrop Ames, Inc., debtor, were, as we have shown above, separate legal persons and separate taxpayers, it must be clear that the debtor can not charge off a debt against his creditor without a release of liability, and thereby establish one of the two elements required to perfect an allowable deduction in the income tax return of the creditor. That Mr. Ames did not release the debt is shown both by the fact that he did not charge it off on his personal books and by the fact that subsequently he recovered judgment against the corporation, by its consent, of an amount representing *all* his advances to the corporation, including those here in question.

It is sufficient, to dispose of the case, to rest the decision of this point on the one ground above set forth. But the taxpayer is entitled to a decision based not alone upon the manner in which the books of account were kept but also upon all the facts of the situation. Upon these facts, and even if Mr. Ames had charged off these sums, or any other sums upon his personal books, as he did not, did he, during the years in question, ascertain that the advances theretofore made to the corporation in the sums claimed or in any other sums were worthless and unrecoverable in whole or in part?

What were these advances?

In the main the advances in question were sums forwarded from Mr. Ames' personal office in Boston to the New York office. Not all sums so forwarded were used for " Office of Winthrop Ames, Inc.," account. With minor exceptions, however, the sums charged out of the Boston office appear as corporation credits to Mr. Ames on the New York books. The account on the Boston books was headed " Theatrical Dramatic Investment " and submitted in the record. As of January 1, 1918, the total so charged amounted to $771,142.65, as of January 1, 1919, to $856,142.65, and as of January 1, 1920, to $974,142.65.

On December 31, 1917, the books of "Office of Winthrop Ames, Inc.," showed total "assets" of $419,784.44, and liabilities as follows:

| | |
|---|---:|
| Winthrop Ames | $404, 247. 57 |
| Income tax | 551. 00 |
| Shubert Theater Co | 4, 985. 87 |
| Capital stock | 10, 000. 00 |
| | 419, 784. 44 |

Among the "assets" so listed, however, is an unclosed profit and loss account of $303,870.56. Deducting this amount from the assets and from Mr. Ames' account (as was apparently done in opening the books for 1918) the accounts stood:

### ASSETS

| | | |
|---|---:|---:|
| Cash | | $138. 36 |
| Advances | | 355. 00 |
| Wm. A. Brady | | 1, 950. 63 |
| Plays: | | |
| "Hans" | $1, 254. 10 | |
| "Marionette" | 4, 340. 96 | |
| "Otto IX" | 1, 071. 30 | |
| "Seventeen" | 2, 500. 00 | |
| | | 9, 166. 36 |
| General production and operation | | 103, 705. 32 |
| Lamp account | | 247. 73 |
| Loans to theaters | | 350. 48 |
| | | 115, 913. 88 |

### LIABILITIES

| | |
|---|---:|
| Winthrop Ames | 100, 377. 01 |
| Income tax | 551. 00 |
| Shubert Theater Co | 4, 985. 87 |
| Capital stock | 10, 000. 00 |
| | 115, 913. 88 |

During 1918 the corporation credits Mr. Ames with advances of $103,882.82 and charges him with a like amount as follows:

| | |
|---|---:|
| Cash withdrawn | $810. 02 |
| Losses Little Theater | 22, 730. 20 |
| Losses Office Winthrop Ames (Inc.) | 80, 342. 60 |
| | 103, 882. 82 |

The difference between advances as shown on the Boston books and the corporation books is reconciled as follows:

| | |
|---|---:|
| Advances, Boston books | $85, 000. 00 |
| Less sent direct to London | 5, 000. 00 |
| | 80, 000. 00 |
| Plus amount offset by cash withdrawal | 500. 00 |
| Corporation books credit to Boston | 80, 500. 00 |
| Plus dividends not received direct from Boston | 20, 000. 00 |
| Plus refund Betrothal royalty | 3, 382. 82 |
| Total advances per corporation books | 103, 882. 82 |
| Less cash withdrawals | 810. 02 |
| Claimed as a loss on Mr. Ames's personal income tax return | 103, 072. 80 |

The assets December 31, 1918, appeared on the corporation books as follows:

| | | |
|---|---|---:|
| Cash | | $4, 347. 67 |
| Advances | | 405. 00 |
| Wm. A. Brady | | 950. 63 |
| Plays: | | |
| "Hans" | $1, 245. 10 | |
| "Betrothal" | 52, 289. 42 | |
| "Otto IX" | 1, 086. 60 | |
| "Purple Mask" | 1, 500. 00 | |
| "Seventeen" | 1, 504. 29 | |
| "Morris Dance Prod" | 16. 30 | |
| | | 57, 650. 71 |
| General production and operation | | 51, 438. 63 |
| Income tax withheld | | 148. 43 |
| Lamp account | | 228. 78 |
| Theater loans (Little Theater) | | 2, 345. 30 |
| | | 117, 515. 15 |

Liabilities were as follows:

| | |
|---|---:|
| Winthrop Ames | $100, 377. 01 |
| Booth Theater | 2, 152. 27 |
| Shubert Theater Co | 4, 985. 87 |
| Capital stock | 10, 000. 00 |
| | 117, 515. 15 |

If the loss of the year had not been written off to Mr. Ames but to profit and loss, and if the Little Theater loss advanced by this corporation had been carried as an advance to that theater together with the other loan which was carried forward, this balance sheet would have been as follows:

ASSETS

| | |
|---|---:|
| Cash | $4, 347. 67 |
| Advances | 405. 00 |
| Wm. A. Brady | 950. 63 |
| Plays | 57, 650. 71 |
| General Production and Operation | 51, 438. 63 |
| Miscellaneous Assets | 377. 21 |
| Little Theater | 25, 075. 50 |
| Profits and loss | 80, 342. 60 |
| | 220, 587. 95 |

LIABILITIES

| | |
|---|---:|
| Winthrop Ames | $203, 449. 81 |
| Booth Theater | , 2, 152. 27 |
| Shubert Theater Co | 4, 985. 87 |
| Capital stock | 10, 000. 00 |
| | 220, 587. 95 |

Could Winthrop Ames, as a creditor of the Office of Winthrop Ames, Inc., claim as worthless the above debt to him as of December 31, 1918, in the sum of $203,449.81, or any part of it?

To answer this question we must first accept the principle that if Mr. Ames could claim such a debt to be worthless the claim should be equally good if any other person not a stockholder had been a creditor in a like sum at that time.

The answer lies in the assets of the corporation. There appear to be no preferred creditors and the liabilities to others than Mr. Ames are negligible.

Ignoring the item of plays the obviously realizable assets of the corporation were:

| | |
|---|---:|
| Cash | $4, 347. 67 |
| Wm. A. Brady | 950. 63 |
| Little Theater | 25, 075. 50 |
| | 30, 373. 80 |

We must next consider the assets representing at that time the unreturned cost of plays then on the boards or in process of preparation. Mr. Ames' practice was to carry the cost of plays as an asset until such time as they either liquidated the cost or demonstrated that they were unsuccessful, at which time the cost to that date was charged off and the losses so sustained constitute in fact the amounts here claimed to be deductible.

It appears that such cost is divided into two heads in the above figures—specific cost of certain plays and general overhead and unallocated costs. These assets total together $109,089.34. Accepting Mr. Ames' judgment as recorded on the books at that time, the assets available to meet his claim, therefore, totaled at the close of 1918:

| | |
|---|---:|
| Cash and accounts | $30, 373. 80 |
| Plays (allocated) | 57, 650. 71 |
| Plays (unallocated costs) | 51, 438. 63 |
| Total | 139, 463. 14 |
| Total liabilities (except capital stock) | 210, 587. 95 |

The above represents the apparent maximum recovery. Mr. Ames testified at the hearing, however, that in general the asset of plays was a highly uncertain one and that in his best judgment the items so carried as of the close of 1918 were in reality worth not to exceed $20,500. Practically the entire item of plays at the close of 1918 was the cost of the "Betrothal", which subsequently proved a total loss, and "Hans", then beginning, which became the "Beggar on Horseback" and became a success.

Numerous excerpts could be made from Mr. Ames' testimony to show how uncertain was the value of the assets under the heading of plays. Of the group, one was destined to be a great success. In that state of the record it is impossible to say that the item of plays was overstated as of the close of 1918, considering it as a part of a going business. On that basis then it is clear that the "Office of Winthrop Ames, Inc.," was not a solvent corporation but it is equally clear that no creditor could have estimated at the close of 1918 the extent of his probable loss. It is apparent that at the close of 1918 the corporation "Office of Winthrop Ames, Inc.," presented the case of a going business unable to meet its current liabilities from liquid assets and indeed not expected to do so. Any creditor could, in these circumstances, have forced liquidation and the definite ascertainment of his loss. But this Mr. Ames did not do. Instead it is asked that the Board now speculate whether and to what extent the corporation was insolvent in 1918, and Mr. Ames' account represented a worthless debt. No such duty devolves upon us. The

duty to determine that a debt is worthless in a definite sum is upon the taxpayer, he to support his conclusion with equally definite and certain evidence. Here the evidence is merely that Mr. Ames advanced to the corporation during 1918 a net sum of $103,072.80, that the corporation at the close of the year charged that exact sum to Mr. Ames' account, and that Mr. Ames claimed that exact sum as a deduction from income in his return. Such evidence is quite inadequate for the purpose.

In substance the facts for the year 1919 are similar. Here a deduction of $51,894.99 is claimed; the open account increases to $165,817.76. Among the losses so charged are " Hans production ", $1,254.10, which, as stated above, was the beginning of the successful " Beggar on Horseback ", and was not a loss at all. The " Little Theater Expense ", $8,217.42, was an advance to a separate enterprise, and the balance of the deduction was made up in large part of office expenses and salaries paid during the year by the corporation. The total assets shown by the balance sheet at the end of 1919, as at the end of 1918, disclose a large possible recoverable balance upon the total debt which again appears neither worthless in whole nor in any definitely ascertainable part.

In one respect, however, the Board finds that there exists an allowable deduction as compared with the findings of the Commissioner, which is, in the present state of the record, uncertain in its actual amount. It appears from the evidence that the corporation formed to assume ownership of the Little Theater was dissolved either in 1917 or early in 1918; that Mr. Ames resumed personal ownership of that property and thereafter, at some time not disclosed by the record, leased it to other parties. Upon such dissolution, Mr. Ames reported that he neither made a profit nor sustained a loss. In 1918 and 1919, however, there appear in the accounts of " Office of Winthrop Ames, Inc.," losses relating to the operation of the Little Theater which if the property was then owned personally by him, as would seem to be the case on the record now before the Board, he was personally entitled to deduct in his return. These losses were:

| | | |
|---|---|---|
| 1918 | | $22,730.20 |
| 1919 | $8,217.42 | |
| | 7,395.30 | |
| | | 15,612.72 |
| Total | | 38,342.92 |

As the evidence now before the Board is insufficient to enable it to determine finally the exact nature of these expenditures, whether they were in fact expenses or capital expenditures and whether the sums deductible, if any, are correctly stated above, final decision in this case will be reserved.

If it shall be shown to the satisfaction of the Commissioner that the above sums or any other sums upon which the parties may agree represent operating losses of the Little Theater at a time during the years in question when it was personally owned by Mr. Ames, the deficiency in tax will be determined by the Board upon the basis of such agreement; or, if necessary, the Board will upon motion receive further evidence upon this phase of the case and thereupon determine the deficiency.