## Appeal of STEELE COTTON MILL CO.     Docket No. 488.

A debt may not be charged off as worthless until the taxpayer has taken all reasonable steps to determine that there is no probability of payment or collection thereof and has prima facie evidence to prove that the debt has no value.

Under section 234(a)(5) of the Revenue Act of 1918 a part of a debt may not be written off as worthless and the other part maintained on the books of the taxpayer as having a value.

Submitted December 17, 1924; decided January 13, 1925.

*James C. Peacock, Esq.*, for the taxpayer.

*W. Frank Gibbs, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

### Before GRAUPNER, LANSDON, and SMITH.

This appeal involves income and profits taxes for the calendar year 1920 and is from a deficiency in the amount of $10,554.23 determined by the Commissioner. Oral and documentary evidence was introduced at the hearing, from which the Board makes the following

#### FINDINGS OF FACT.

1. The taxpayer is a North Carolina corporation engaged in the manufacture of cotton yarn at Lenoir, in that State.

2. In July 14, 1920, the taxpayer sold 30,000 pounds of cotton yarn to the Piedmont Commission Co., of Charlotte, N. C., at an agreed price of $30,875.28, payment for which became due under the terms of the sale on September 2, 1920. No part of that amount was paid by the due date. Thereafter and on October 9, 1920, after several demands for payment had been made by the taxpayer, the

Piedmont Commission Co. paid to the taxpayer, on account, the sum of $4,000.

3. During the period between July 14 and December 31, 1920, the market price of cotton yarn declined from a value of $1.30 to a quoted price of about 30 cents per pound, with a demoralized and stagnant market and little demand for yarn at the latter-named price.

4. After the payment of the $4,000 on October 9 and prior to December 16, 1920, the taxpayer made several demands on the Piedmont Commission Co. for payment of the balance of $26,875.28 which remained due on the sale of the yarn. No payment was made by the company and its officers admitted to the taxpayer that, due to the drop in prices on cotton yarn, it was financially embarrassed and could make no further payments at that time.

5. The Piedmont Commission Co. was incorporated with a capital stock of about $35,000; it was engaged in the manufacture of duck and madras, and its board of directors was composed of men of admitted integrity, financial responsibility, and prominence in business in North Carolina. These directors arranged a meeting between the board and some of the larger creditors of the company, which was held on December 16, 1920, and at which the secretary-treasurer of the taxpayer was present as its representative. The creditors were informed that the liabilities of the company approximated $200,000 and that if it was forced into bankruptcy the assets would be insufficient to permit any payments to the creditors. At this meeting it was orally agreed between the members of the board of directors of the company and creditors' representatives that the creditors would compromise their claims and accept the promissory notes of the corporation for 70 per cent of the amounts due, which notes were to be indorsed by the members of the board of directors as individuals. It was also agreed that the creditors represented would not institute proceedings in bankruptcy against the company.

6. At the above-mentioned conference of December 16, 1920, the taxpayer agreed to accept promissory notes of the company in the aggregate amount of $18,712.68, which notes were to be indorsed by the members of the board of directors and were to be in settlement of the taxpayer's claim against the Piedmont Commission Co. It was understood that the notes would be executed and mailed to the taxpayer on the next day. The promissory notes were not mailed by the company to the taxpayer on the prescribed day. On December 24 and again on December 29, 1920, the taxpayer made written or telegraphic demand upon the company for the delivery of the promissory notes but received no reply. On December 31, 1920, the taxpayer closed its books for the calendar year and at that time charged off the entire amount of $26,875.28, the balance of the sales price of the cotton yarn sold to the Piedmont Commission Co. as a bad debt.

7. The closing of the books of the taxpayer on December 31, 1920, was in accordance with its usual custom and was completed in order that a financial report on the affairs of the corporation might be made to the annual meeting of its stockholders, which was held on January 2, 1921.

8. Subsequent to the closing of the books and the stockholders' meeting and on January 4, 1921, the Piedmont Commission Co.

mailed its promissory notes to the total amount of $18,712.68 to the taxpayer. Each of the notes was indorsed by the individuals composing the board of directors of the company and all were paid in the course of two years thereafter. The notes were accepted by the taxpayer and the amount thereof was credited to profit and loss on the books of the taxpayer on January 5, 1921.

9. On March 14, 1921, the taxpayer filed its corporation income and profits tax return for the calendar year 1920 with the collector of internal revenue at Raleigh, N. C. In this return the taxpayer deducted the said sum of $26,875.28 as a debt ascertained to be worthless and charged off in the taxable period. This deduction was disallowed by the Commissioner.

### DECISION.

The deficiency determined by the Commissioner is approved.

### OPINION.

GRAUPNER: The taxpayer contends that, having considered the debt of $26,875.28 worthless and written it off its books of account on December 31, 1920, the Commissioner erred in not allowing that amount to the taxpayer as a deduction in its tax return for the calendar year 1920. As an alternative the taxpayer asserts that the Commissioner, having disallowed the deduction of the entire amount of the debt, should have allowed a deduction of $8,162.60, which is the difference between the sum of $18,712.68, for which it agreed to compromise on December 16, 1920, and the amount of $26,875.28, the balance due on the original indebtedness.

The Commissioner contends that under the provisions of 234(a)(5) of the Revenue Act of 1918 his disallowance of the deduction was proper and that the alternative suggested by the taxpayer is not within the contemplation of that subsection.

Section 234(a) of the Revenue Act of 1918 provides in part:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * * (5) Debts ascertained to be worthless and charged off within the taxable year.

Under the provisions of this section two events must have occurred before the taxpayer was entitled to write off the balance due from the Piedmont Commission Co. as bad debt, viz: (1) The debt must have been *ascertained* to be worthless, and (2) it must have been charged off within the taxable year. The second of these may be considered as having been performed. Therefore, whether or not the debt was *ascertained* to be worthless remains to be determined.

The word *ascertain* has a definite and common meaning, both in law and in ordinary usage, i. e., "To make certain to the mind; to make sure of; to determine." See *Webster's Unabridged Dictionary, Standard Dictionary, Bouvier's Law Dictionary*, 1 *Words and Phrases (1st series)*, 1 *Words and Phrases (2d series)*. With this definition in mind the question naturally arises: What did the taxpayer do to determine that the balance due from the Piedmont Commission Co. was worthless before it was written off the books on December 31, 1920?

The evidence shows that the debt was incurred July 14, 1920; that a part payment of $4,000 was made on October 9, 1920; that on December 16, 1920, a conference was had between the directors of the Piedmont Commission Co. and the taxpayer, whereat the taxpayer agreed to accept promissory notes, indorsed by the individual directors, in the amount of $18,712.68 in full settlement of its claim; that the notes were not delivered on the day following the conference; that, between December 16 and December 31, 1920, the taxpayer made two demands for delivery of the notes but received no reply; that on December 31, 1920, it charged off the full amount of the debt as worthless.   It also shows that the taxpayer made no endeavor to ascertain the actual assets of the Piedmont Commission Co.; that the men who composed the directorate of the company were men of high integrity, financial responsibility, and prominence in business in North Carolina, and that they did not desire the company forced into bankruptcy; that the taxpayer did not seek out or confer with any of the directors to ascertain whether or not the promised notes would be delivered or what was the cause of the delay in delivery.   A summing up of these facts shows that the taxpayer reached its conclusion as to the worthlessness of the debts upon the facts that the notes were not delivered within 14 days after the conference with the directors and that it had received no reply to one letter and one telegram sent sometime after December 17, 1920.   Before a taxpayer is entitled to take a deduction for a " debt ascertained to be worthless," he must take reasonable steps to determine that there is no probability of payment or collection and have prima facie evidence to prove that the debt has *no* value.   Under the facts shown in this appeal, the time was too limited and the endeavor too restricted for us to consider that the taxpayer had thoroughly investigated the resources of the Piedmont Commission Co. or that sufficient effort had been made to *make sure* that the compromise agreement would not be fulfilled or that the company could not or would not pay.   This taxpayer has not made a showing which would entitle it to consideration under this test, and its first contention must be denied.

This decision leads to the consideration of the alternative contention made by the taxpayer, viz: The Commissioner should have allowed a deduction in the amount of $8,162.60, the difference between the debt of $26,875.28 and the amount of the promised notes, $18,712.68.

The Commissioner assumes the position that the word *debt*, as used in the act of 1918, means a debt in its entirety and does not permit the partition of a debt and the writing off of one part and the retention of the other part.   A comparison of the wording of sections 234(a) (5) of the Revenue Acts of 1918 and 1921, respectively, leads us to the conclusion that Congress did not contemplate, in the act of 1918, the deduction of a part of a debt.   The notes given in evidence of the compromise were not delivered until after the end of the calendar year 1920 and the taxpayer could not well write down its debt of 1920 until such time as it knew whether or not the compromise agreement was to be fulfilled.

For the foregoing reasons, the determination of the Commissioner is approved.