### Appeal of PORTLAND RAILWAY, LIGHT AND POWER CO.   Docket No. 750.

Advances to an operating corporation, which corporation is not terminated by bankruptcy proceedings or otherwise, may not be deducted as worthless debts in the absence of definite and convincing proof of worthlessness.

Submitted February 17, 1925; decided May 20, 1925.

*Henry A. McCarthy, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

This is an appeal from a deficiency asserted by the Commissioner in income and profits taxes for the years 1918, 1919, and 1920, in a net sum of $14,330.50, and in amounts by years as follows:

| | |
|---|---|
| 1918 Overassessment | $1,737.17 |
| 1919 Deficiency | 8,138.32 |
| 1920 Deficiency | 7,929.35 |

Three errors are alleged by the taxpayer:

1. That the Commissioner refused to allow as deductions from income in the several years in question, respectively, $52,161, $51,710, and $51,259, being payments on account of interest and sinking fund on bonds of the Willamette Valley Southern Railway Company, dated February 2, 1914.

2. That, in the year 1920, the taxpayer suffered a loss on account of sale of capital assets in an alleged sum of $59,006.91, of which loss the Commissioner has allowed as a deduction $21,254.98.

3. That, by reason of a mathematical error in computation, the Commissioner has overstated the net income for the year 1920 by $20,000. The last-named allegation is admitted by the Commissioner in his

answer.  On the other two issues hearing was had on February 17, 1925, oral testimony taken, and documentary evidence submitted, from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is a corporation incorporated under the laws of the State of Oregon, with its principal office in the City of Portland. Its name was, in the years in question, the Portland Railway Light and Power Company, which name has since been changed, on April 26, 1924, to the Portland Electric Power Company.

During the year 1914, the Willamette Valley Southern Railway Company was constructed and, for the purpose of financing such construction, issued its capital stock, preferred and common, and its first mortgage bonds.  The taxpayer entered into a joint agreement with the bondholders and trustees under the mortgage of the Willamette Valley Southern Railway Company, whereby it guaranteed the performance by the railroad company of the payments of interest and principal covenanted in the bonds.

The taxpayer was, during the taxable years here in question, the owner of all of the preferred stock of the railroad company, in the amount of $182,000 outstanding, and is the owner of common stock in the amount of $547,900 out of a total of $990,500 outstanding. At the close of business December 31, 1915, the Willamette Valley Southern Railway Company showed a deficit from operations and otherwise in the sum of $70,601.68, which deficit continuously increased from that date to and including the end of the taxable and calendar year 1924, the amounts of the annual deficits being as follows:

| | |
|---|---:|
| 1915 | $70, 601. 68 |
| 1916 | 61, 291. 82 |
| 1917 | 67, 791. 55 |
| 1918 | 72, 274, 90 |
| 1919 | 74, 338. 30 |
| 1920 | 89, 044. 69 |
| 1921 | 98, 316. 25 |
| 1922 | 108, 972. 26 |
| 1923 | 144, 502. 25 |
| 1924 | 139, 319. 82 |
| Total accumulated deficit to Dec. 31, 1924 | 926, 453. 52 |

The total assets of the said railroad company as of the close of the several years were as follows:

| | |
|---|---:|
| 1915 | $1, 978, 683. 06 |
| 1916 | 1, 982, 560. 09 |
| 1917 | 1, 989, 075. 64 |
| 1918 | 1, 982, 619. 98 |
| 1919 | 1, 981, 080. 84 |
| 1920 | 1, 990, 525. 94 |
| 1921 | 1, 988, 322. 86 |
| 1922 | 1, 997, 211. 96 |
| 1923 | 1, 987, 335. 29 |
| 1924 | 1, 983, 474. 23 |

As of the close of each year above mentioned, the railway company was indebted to the taxpayer for advances as follows:

| | |
|---|---|
| 1915 | $250, 498. 26 |
| 1916 | 142, 181. 41 |
| 1917 | 200, 092. 16 |
| 1918 | 264, 116. 62 |
| 1919 | 324, 032. 51 |
| 1920 | 400, 240. 25 |
| 1921 | 479, 014. 85 |
| 1922 | 569, 932. 69 |
| 1923 | 670, 257. 33 |
| 1924 | 770, 696. 14 |

In addition to the above, the railway company was indebted to the taxpayer for matured and unpaid interest on its indebtedness to the taxpayer as follows:

| | |
|---|---|
| 1915 | $3, 980. 65 |
| 1916 | 4, 240. 00 |
| 1917 | 15, 100. 00 |
| 1918 | 29, 775. 00 |
| 1919 | 47, 985. 00 |
| 1920 | 70, 820. 00 |
| 1921 | 97, 775. 00 |
| 1922 | 129, 840. 00 |
| 1923 | 167, 570. 00 |
| 1924 | 211, 740. 00 |

As of December 31 of each of the same years, the funded debt of the railway company was as follows:

| | |
|---|---|
| 1915 | $750, 000. 00 |
| 1916 | 750, 000. 00 |
| 1917 | 750, 000. 00 |
| 1918 | 735, 000. 00 |
| 1919 | 727, 000. 00 |
| 1920 | 720, 000. 00 |
| 1921 | 712, 000. 00 |
| 1922 | 704, 800. 00 |
| 1923 | 697, 700. 00 |
| 1924 | 687, 200. 00 |

Throughout the above period, and in particular in the taxable years in question, the taxpayer advanced to the railroad company the funds necessary to meet its operating deficits and its interest and sinking-fund charges, said advances on interest and sinking fund being, in the year 1918, $52,161; in 1919, $51,710; and in 1920, $51,259; and the said sums were credited to the taxpayer by the Willamette Valley Southern Railway Company upon its books.

During the year 1920 the taxpayer sold certain property for $88,000, purchased in the year 1907 at a cost of $119,628.49, the fair market value of which on March 1, 1913, was $151,538.50. The Commissioner computed a loss on account of the foregoing transaction in the sum of $21,254.98, said computation being arrived at by subtracting the sales price from the cost in 1907, less depreciation in a sum of $10,373.51 from 1907 to the date of sale. The taxpayer alleges that the loss should be computed by subtracting the sales price from the value on March 1, 1913, of $151,538.50, less depreciation from 1913 to 1919 in the sum of $4,531.59. The values and figures are not in dispute between the parties, the sole dispute being as to the method of computation, that is, whether the cost in 1907

or the fair value as of March 1, 1913, shall be taken as the basis for the computation of gain or loss.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on ten days' notice, in accordance with Rule 50.

### OPINION.

JAMES: Upon the first point the determination, under prior decisions of the Board, must be in favor of the Commissioner. The taxpayer in this appeal alleges that the railway company was insolvent; that it was forced to advance the sums of money in question to pay the interest and sinking-fund requirements of the bonds which it had guaranteed, and is, therefore, entitled to deduct such payments. The Board decided, however, in the *Appeal of Winthrop Ames*, 1 B. T. A. 63, that advances for operating expenses or advances otherwise made to a corporation and carried as a charge against that corporation without any attempt to liquidate the debtor corporation or otherwise terminate the transaction, may not be charged off as worthless debts or as advances so long as the corporation to which such advances are made continues as an active corporate entity, is not actually adjudged bankrupt, and no effort is made to close or liquidate the account. To the same effect is the *Appeal of Steele Cotton Mill Co.*, 1 B. T. A. 299.

The facts in the instant appeal are not so strong as those in the *Appeal of Winthrop Ames*. Here it is apparent that the debtor corporation, on the basis of its book assets, is able to satisfy the existing debt, even at the close of 1924, in full. During the years 1918, 1919, and 1920, the total indebtedness to the taxpayer ranged approximately from $295,000 to $470,000, including the advances here in question. At the close of the year 1920 the railway company had assets of $1,990,000, an unmatured funded debt of $720,000, and the unfunded debt to the taxpayer as above stated of approximately $470,000. Liabilities other than to the taxpayer and on funded debt were negligible in amount. As stated in the *Ames* appeal:

> The duty to determine that a debt is worthless in a definite sum is upon the taxpayer, he to support his conclusion with equally definite and certain evidence.

The taxpayer relies upon Solicitor's Memo., 1298, 2 C. B. 113. An examination of the opinion indicates that the facts of the case there in question were materially different from the facts in this appeal, particularly in the way in which the accounts of the two corporations were treated. We believe this opinion is not authority for the position taken by the taxpayer.

The amounts deducted on account of interest and sinking fund, paid by the taxpayer on account of the indebtedness of the Willamette Valley Southern Railway Company, may not be allowed in computing net taxable income in the years in question.

Upon the second point the taxpayer relies on the decision of the Board in the *Appeal of Even Realty Co.*, 1 B. T. A. 355. In that

appeal, the question was whether the taxpayer could be taxed upon a computation of gain or loss, one of the elements of which was depreciation actually sustained but not reflected upon the taxpayer's books of account. In this appeal the question is whether the taxpayer may deduct a loss on selling price as compared with March 1, 1913, value in excess of the loss computed by comparing cost with selling price. In this appeal, there is no dispute as to the deduction of depreciation through all the years, and it appears to be conceded that the value of the depreciable property should be reduced on account of depreciation, either from the date of purchase or from March 1, 1913, depending upon which basis is used for the computation of gain or loss. There is even no dispute as to the amount of depreciation to be deducted each year.

The question here presented, then, is not the question presented in the *Appeal of Even Realty Co.*, but is the question presented by *United States v. Flannery*, 268 U. S. 98, and *McCaughn v. Ludington*, 268 U. S. 106. In these cases the question presented was whether losses shall be computed from the single basis of value as of March 1, 1913, regardless of cost, to arrive at the deduction allowed by Congress with respect to capital transactions terminated by loss, or whether losses shall be measured by value as of March 1, 1913, or cost, whichever is lower.

The Commissioner in this appeal has computed the loss of the taxpayer upon the basis of March 1, 1913, value or cost, whichever is lower, and his contention must, therefore, under the authority of the above-cited cases, be sustained, and the taxable income computed by allowing, as the Commissioner has done, a loss of $21,254.98.