Milwaukee Lumber Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 8784, 10981.   Promulgated August 28, 1929.

*George E. H. Goodner, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

OPINION.

LOVE: As relating to the year 1918 the sole question presented in this proceeding is the petitioner's right to determination of its excess-profits taxes in accordance with sections 327 and 328 of the Revenue Act of 1918, which, so far as material, provide:

SEC. 327. That in the following cases the tax shall be determined as provided in section 328.

\*     \*     \*     \*     \*     \*     \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital \*   \*   \*.

SEC. 328. (a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year. \*   \*   \*

This petitioner contends that abnormalities affecting its capital or income existed in two particulars during the year 1918. They are, first, the use of borrowed capital in amounts far exceeding its invested capital and upon interest terms equaling approximately 50 per cent of the normal rate upon such borrowings, and, second, in respect to salaries paid its officers.

The monthly average amount of bills payable was $472,467.87. At 8 per cent, which was the normal interest rate upon such borrowings, interest upon trade obligations of the petitioner would amount to $37,797.43. The difference between this amount and $59,462.04, which is the total of debits to interest during 1918, amounts to $21,664.61 and, the petitioner contends, represents the interest credits on stockholders' loans. Upon the monthly average amount of loans from stockholders, i. e., $585,123.86, the $21,644.61 above mentioned would indicate an interest rate of less than 4 per cent (0.03699) upon stockholders' loans.

The figures and computations set forth in the paragraph last above are offered in the petitioner's brief, as the principal basis upon which

the claim for special assessment is made. The petitioner especially contends that it was able to borrow large sums of money from its stockholders at low rates of interest and that by reason thereof an abnormality was created in its income. Without expressing an opinion as to the soundness of the petitioner's theory, we desire to point out that upon the record its syllogism is unacceptable because the major premise has not been established.

While the rate or rates of interest paid on stockholders' loans and the total amount of such interest are facts peculiarly within the knowledge of the petitioner, there is no evidence in the record relative thereto. The rate has been mentioned as " varying " and the crediting of it as " irregular," but we are asked to believe that the rate was less than 4 per cent. The total amount paid or credited stockholders as interest on loans we must find by computing the difference between the total of interest at the normal rate on bills payable and the total debits to interest during the taxable year.

We have no evidence that the petitioner paid the normal rate on its trade accounts. We would be as well justified in believing that the petitioner paid 6 per cent on both trade accounts and stockholders' loans as in believing that it paid 8 per cent on trade accounts and only 4 per cent on stockholders' loans.

While from the record it appears that the petitioner used large amounts of borrowed capital, this fact does not in itself necessarily create an abnormality. The petitioner alleged that in its case an abnormality of income was produced because the capital borrowed from stockholders was borrowed at an interest rate only one-half of the normal rate. The record fails to substantiate that allegation. The interest which was paid was a deduction from income, and whatever the difference between the legal rate and the amount paid was, it does not appear to have created an abnormality in income.

As a further basis for its allegation of an abnormality in income, the petitioner asserts that its officers, particularly Herrick, the president, were paid salaries not at all commensurate with the value of their services. Total salaries paid amounted to $8,500, of which. Herrick received $5,000. Herrick was engaged in the affairs of the Scotch Lumber Co. and the Export Lumber Co., as well as those of the petitioner. We have little evidence of his services to the petitioner, certainly not sufficient to hold that his salary was so inadequate as to create an abnormality of income. See *Kossar & Co.*, 16 B. T. A. 952; *Warren County Fertilizer Co.*, 17 B. T. A. 113.

We conclude that the petitioner has failed to establish error in the respondent's denial of special assessment for the year 1918.

The principal allegation of error with respect to the respondent's determination of the deficiency for the year 1920 is the respondent's failure to permit the deduction of $94,217.63 as a bad debt.

It appears that at December 31, 1920, the Railway Company was indebted to the petitioner in the amount of $94,217.63. The railroad had always operated at a loss and at the date mentioned, its source of business being about exhausted, it was apparent that the company would never have a sufficient income to permit liquidation of its debt.

The petitioner had theretofore taken over certain assets of the Railway Company and was operating them as a private logging spur. On December 31, 1920, the petitioner charged off its books as a loss $69,217.63, and claimed a deduction of this sum in its tax return as a bad debt. The balance of the account, amounting to $25,000, was permitted to remain on the petitioner's books retaining the form of an account receivable, but, being in fact, the petitioner now contends, an asset account of the Alder Creek logging spur.

In an affidavit dated July 21, 1925, and filed with the Bureau of Internal Revenue, J. C. Palmer, vice president of the petitioner, stated that he was:

Vice-President of the Milwaukee Lumber Company and as such officer had access to, and is familiar with the books and records and affairs of said company, and is qualified to make this affidavit.

That the Alder Creek Railway Company was incorporated December 27, 1912, with an authorized capital stock of $25,000, all of which was issued to officers of the Milwaukee Lumber Co. without consideration.

\* \* \* \* \* \* \*

That the total account against the Alder Creek Railway Company in 1920 amounted to $94,217.63. That of this amount, $69,217.63 was charged off as a loss in 1920, leaving a balance of $25,000. That the entire amount of this account became a loss in 1920, and should have been charged off the books for the reason that in 1919 and 1920, the Milwaukee Lumber Company purchased all of the assets of the Alder Creek Railway Company, and in 1920 took judgment for the balance of the account.

\* \* \* \* \* \* \*

That at the time of charging off the $69,217.63 the officers of the Milwaukee Lumber Company did not understand that the entire amount would have to be charged off in that year in order to be deductible in the income-tax return of the company. That it is now understood that the entire amount of $94,217.63 should have been written off the books in 1920, the year in which judgment was taken, and that the entire amount is deductible in computing income for that year.

Mr. Palmer had access to the records to secure the information contained in the said affidavit.

By an affidavit dated October 23, 1925, the statement that judgment was taken in 1920 was corrected.

In support of its contention that subsequent to December 31, 1920, the $25,000 balance of the Railway Company account was an asset account of the Alder Creek spur and not an account receivable, the petitioner has established that at December 31, 1921, it charged $10,-

000 off this account and deducted that amount from income for 1921 as a logging expense and not as a bad debt or a loss. There has also been certain testimony in support of the petitioner's contention. We think, however, that upon the whole the petitioner's treatment of the Railway Company's account has not been such as to warrant our approval of the deduction claimed.

The statute involved is section 234 (a) (5) of the Revenue Act of 1918, which provides:

SEC. 234. (a) That in computing the net income of a corporation * * * there shall be allowed as deductions:

(5) Debts ascertained to be worthless and charged off during the taxable year.

We have held that to constitute allowable deductions alleged bad debts must meet two tests: (1) That they were charged off during the taxable year, and (2) that they represent debts ascertained to be worthless. *Steele Cotton Mill Co.,* 1 B. T. A. 299. The language of the statute is unambiguous and unmistakably requires compliance with both conditions before a deduction may be allowed. The first test mentioned requires the setting up of evidence of the ascertainment of worthlessness substantially as of the date of such ascertainment and in confirmation thereof. *Mason Machine Works Co.,* 3 B. T. A. 745. Where a taxpayer keeps books the charge-off should be evidenced by such book entries as will eliminate the debt from its book assets. *E'd. C. Lasater,* 1 B. T. A. 956. Part of a debt may not be written off as worthless and the other part maintained on the books as having a value. *Steele Cotton Mill Co., supra,* and *Cherry Basset Co.,* 2 B. T. A. 426.

After the charge-off of $69,217.63 on December 31, 1920, the Railway Company's account on the petitioner's books showed a debit balance of $25,000. This was in form an account receivable. The petitioner asserts that it was in fact a capital asset acccount of the Alder Creek spur and, on brief, its counsel states:

Any assumption that the balance in the Alder Creek Railway account represented an account receivable necessitates a second assumption that no entry was made on the acquisition of assets consisting of ties, rails, tools, equipment, etc., valued as $25,000, which is highly improbable.

Among the petitioner's witnesses was J. C. Palmer, vice president, who testified that he was familiar with the petitioner's books. On direct examination he was asked:

Q. Now do you know, and I will ask you to refer to the books if you care to, to answer the question, whether the Milwaukee Lumber Company opened any other account when it acquired these assets in 1920, or whether it entered the

equipment, and so forth in any other account? You can refer to the books, if you care to, or answer from your own knowledge if you care to.

A. Not to my knowledge.

The petitioner's books were not offered in evidence.

There are several other features inconsistent with the petitioner's claim that the $25,000 balance mentioned was not the balance of an account receivable. Palmer's affidavit of July 21, 1925, states that "the entire amount of the account became worthless in 1920 and should have been charged off the books." The petitioner's contentions before the Board are inconsistent with the theory that the $25,000 balance represented an Alder Creek spur account, because the petitioner is here claiming a deduction of $94,217.63, which sum makes no allowance for the $25,000 allegedly credited the Railway Company for the assets taken over. Furthermore, the petitioner's suit, and the judgment subsequently received, make no allowance for the assets acquired.

Other features might be discussed, especially whether or not the account was in fact worthless and actually ascertained to be so during 1920. We think, however, that such discussion is unnecessary as it would in no wise affect our ultimate determination, which is that the petitioner has not established that its account with the Railway Company was ascertained to be worthless and was charged off during 1920, or that the total account was worthless and only a part charged off. See *Mason Machine Works Co.*, 3 B. T. A. 745.

The other errors alleged by the petitioner are reductions of invested capital for the year 1920 by (1) the amount of the deficiency determined for the year 1918, and (2) by the amount of $2,123.60, representing a prorated portion of the petitioner's tax liability for the year 1919. With respect to the first of these contentions the Board has held adversely to the petitioner's position and adheres to that ruling. *W. T. & M. Co.*, 11 B. T. A. 722; *Hooven, Owens, Rentschler Co.*, 9 B. T. A. 1376.

The respondent's reduction of invested capital for 1920 by a prorated portion of the petitioner's income and profits taxes for 1919 is approved. His contention that the said invested capital should have been reduced at the beginning of the year by the entire amount of the petitioner's tax liability for the year 1919 is not in accord with our rulings and is denied. *Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

*Judgment will be entered for the respondent.*