**Appeal of THE MURCHISON NATIONAL        Docket No. 608.
        BANK.**

> Under section 234(a) (5) of the Revenue Act of 1918, a part of a debt may not be written off as worthless and the other part maintained on the books of taxpayer as having a value. (*Appeal of Steele Cotton Mill Company*, 1 B. T. A. 299.)
>
> A taxpayer holding collateral security for the payment of a debt may not write off as worthless, under section 234(a) (5) of the Revenue Act of 1918, the difference between the amount of the debt and the estimated value of the security.

Submitted January 13, 1925; decided February 26, 1925.

*James C. Peacock, Esq.*, for the taxpayer.

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

61359°—26——40

Before Ivins, Korner, and Marquette.

This is an appeal from a determination by the Commissioner of a deficiency in tax against The Murchison National Bank of Wilmington, N. C., for the calendar years 1918, 1919, and 1920. From the evidence presented the Board makes the following

FINDINGS OF FACT.

1. Taxpayer is a corporation originally organized under the laws of the State of North Carolina, but later reorganized as a national bank under the laws of the United States. Its principal office is at Wilmington, N. C.

2. The taxes in controversy are income and profits taxes for the calendar years 1918, 1919, and 1920, and are more than $10,000. The deficiency letter was mailed to taxpayer October 30, 1924.

3. Taxpayer acquired for cash at par $25,000 of Imperial Russian Government 6½ per cent bonds, maturing June 18, 1919. The Imperial Russian Government was overthrown and the Soviet Government, which succeeded it, repudiated certain obligations of the Russian Imperial Government, among them this issue of bonds, by decree under date of February 8, 1918. Taxpayer wrote off on its books and claimed as deductions in its income-tax returns $7,500 for the year 1918, $6,000 for the year 1919, and $11,500 for the year 1920. Nothing has ever been paid to taxpayer on account of these bonds, nor has the Soviet Government rescinded or modified its decree of February 8, 1918.

4. On December 31, 1918, J. S. Funches & Co. executed and delivered to taxpayer its promissory note for $15,676.04, payable on demand, and secured by a mortgage on a piece of real estate estimated to be worth $5,000 and life insurance policies estimated to have at that time a cash surrender value of $1,500.

On December 1, 1919, J. S. Funches & Co. not having paid the note, and being unable to make payment either in full or in part, taxpayer charged off the note as worthless in accordance with what it assumed to be the policy of the national bank examiner, namely, to charge off any debt six months past due. The national bank examiner had not, however, given taxpayer any instruction or direction to charge off this particular note. Taxpayer deducted from its income for the year 1919, on account of bad debts, the full amount of the note.

Taxpayer continued to hold the life insurance policies given to it as security for the note of J. S. Funches & Company, until 1924, when it disposed of them, realizing therefrom approximately $2,000. It still holds the mortgage on the real estate.

5. During the year 1920, N. P. Sloan & Co., which was engaged in the cotton business, failed. It was indebted to taxpayer at the close of that year in the sum of $91,492.92 on account of loans made to it, against which taxpayer held as security cotton in storage, having an estimated value, based upon market quotations, of $30,000. Taxpayer charged off as a bad debt at the end of 1920, $61,492.92, the amount of the loan in excess of the estimated value of the security. The cotton was sold in 1921. It proved to be of a lower grade and poorer quality than was supposed, and brought $12,172.16 less than its estimated value. Taxpayer charged off the $12,172.16 as a loss in

1921. At the time N. P. Sloan & Co. failed its assets were of little or no value and taxpayer has never recovered from it on its debt anything except the amount received from the sale of cotton held as security for the loan.

6. The Commissioner disallowed the several deductions herein mentioned taken in the years 1918, 1919, and 1920, and has also disallowed taxpayer's claim that it should be allowed to deduct in 1918 the entire amount of its alleged loss of $25,000 on Russian Imperial Government bonds and that it should be allowed a further deduction in 1920 of the amount of $12,172.16 charged off in 1921. The Commissioner has determined that there is a deficiency in tax for each of the years 1918, 1919, and 1920. From that determination taxpayer appeals.

### DECISION.

The determination of the Commissioner as to the years 1918 and 1919 is approved. The amount of the deficiency to be assessed for the year 1920 will be computed in accordance with the following opinion and settled by the Board on consent or on seven days' notice.

### OPINION.

MARQUETTE: The Commissioner filed a plea in bar to the right of taxpayer to maintain its appeal with respect to the assignments of error set forth in paragraphs 4 (a) and (c) of the petition, and alleged therein "that the facts stated in paragraphs 5 (a), (b), and (d) are not sufficient to sustain the said alleged errors referred to in paragraphs 4 (a) and (c)." At the hearing, the Commissioner, by his attorney, admitted as true, both for the purpose of the plea in bar and for decision of the appeal on its merits, the facts alleged in paragraphs 5 (a), (b), and (c) of the petition. In view of the admissions by the Commissioner, we have overruled the plea in bar, *pro forma*, and will decide the case on the entire record.

The first point raised by the appeal relates to the right of taxpayer to deduct, in its income-tax return for the year 1918, an amount representing the cost to it of Imperial Russian Government bonds alleged to have been ascertained to be worthless within that year. It is alleged by taxpayer and admitted by the Commissioner that the bonds were purchased for $25,000; that subsequently, on February 8, 1918, the Soviet Government, which had overthrown and succeeded the Imperial Russian Government, repudiated the bonds, and taxpayer has never been able to realize anything thereon, and that they were charged off in the amounts of $7,500 in 1918, $6,000 in 1919, and $11,500 in 1920, and taken as deductions in those years.

The authority of law for taking deductions in the years 1918, 1919, and 1920 of worthless debts is found in section 234 (a) of the Revenue Act of 1918, which provides in part as follows:

That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions * * * debts ascertained to be worthless and charged off within the taxable year.

Under the provisions of this section, before taxpayer was entitled to take a deduction of the amount paid by it for bonds of the Im-

perial Russian Government, it must have ascertained that the debt evidenced by the bonds had become worthless and the debt must have been charged off within the taxable year for which the deduction was sought to be taken. The ascertainment of the worthlessness of a debt and the charge-off thereof must occur within the same taxable year, otherwise a taxpayer could defer charging off a debt, known to be worthless, until such time as it would be the greatest benefit to him in effecting a reduction of his tax liability. In this case neither of these events happened in the years 1918 or 1919, for, even if it be conceded that the bonds were worthless in those years, it is not shown that taxpayer had ascertained that they were, or considered them to be, worthless. In the absence of any affirmative evidence that taxpayer ascertained the bonds to be worthless in 1918 or 1919, we deduce from its acts that it not only did not ascertain that they were worthless, that is of no value, in those years, but that, on the other hand, it considered them to have some value. The fact that it charged off only part of the debt in the years 1918 and 1919 indicates that it considered that the bonds still had a value equal to the part thereof not charged off. This Board has held in the *Appeal of Steele Cotton Mill Co.,* 1 B. T. A. 299, that, under section 234(a)(5) of the Revenue Act of 1918, a part of a debt may not be written off as worthless and the other part maintained on the books of the taxpayer as having value. This debt not having been ascertained to be worthless and charged off in its entirety in either the year 1918 or 1919, taxpayer was not entitled to deduct it or any part thereof in determining net income for those years.

The right of taxpayer to deduct in the year 1920 the price paid for the bonds referred to, or any part thereof, presents a more difficult question. It did in that year charge off the value remaining in the bonds, as shown by its books, and it may be said that it thereby indicated that the bonds, in its opinion, had become entirely worthless. We have held that, under the Revenue Act of 1918, part of a debt may not be written off as worthless and the other part maintained on the books of taxpayer as having value. The partial charge-off of these bonds in the years 1918 and 1919 was, therefore, of no effect. However, as taxpayer evidently considered the bonds to have become worthless in 1920, and intended to charge off in that year whatever value it thought them to have prior thereto, it would be permitted, provided it established they had in fact become worthless, to charge off the entire amount in that year.

The Soviet Government on February 8, 1918, repudiated the bonds which taxpayer held, and from that date to the present time has not revoked, rescinded or modified its decree of repudiation. The bonds matured on June 18, 1919, but were not paid. They still remain unpaid. We know of no method or tribunal by which or before which taxpayer can enforce payment of the obligation. In short, we cannot see that at the present time the bonds have any value whatever, unless it be a mere speculative value, or that they had any more value in 1920 than at the present time. We are of the opinion that the bonds were worthless in 1920, and, in view of the circumstances under which they were charged off, the taxpayer should be permitted to take the full amount paid for the bonds as a deduction in determining its net income for that year.

The second issue raised by the appeal involves the right of taxpayer to deduct in its return for the year 1919 an alleged worthless debt owing to it by J. S. Funches & Company, in the amount of $15,674.04. The evidence relative to this point discloses that the obligation was created December 31, 1918, payable on demand; that taxpayer held security therefor having an estimated value of $6,500; that the debt was still unpaid on December 31, 1919, and the debtor was at that time unable to make any payment thereon; that taxpayer therefore charged off the debt, under what it assumed to be the policy of the national bank examiner, but that it continued to hold the security and still holds a part thereof at the present time.

We can not agree with taxpayer that this was a debt ascertained to be worthless and charged off within the taxable year. It was charged off but it was not worthless since taxpayer held security, which, according to the testimony of its own officer, gave the debt a value on December 31, 1918, of at least $6,500. If taxpayer at the close of the year 1919 had disposed of the security and applied the proceeds thereof to reducing the debt, the debt as reduced, if in fact worthless, and so ascertained after usual and reasonable means had been exhausted to collect it, would have been the proper subject of a charge off.

The fact that the entire amount of the debt was charged off in accordance with what was assumed to be the policy of the national bank examiners, seems to us to have no bearing on the question presented here. It is well known that national bank examiners, in accordance with sound banking and good business methods, ofttimes require banks to charge off overdue paper. This action can not be construed as indicating in any way that the paper so charged off is worthless, but only that its value is doubtful and that it is desirable that banks shall include in their balance sheets only such assets as have unquestioned value.

The third and fourth points raised by the appeal arise from a single transaction and will be discussed together. The evidence discloses as to these points that, at the close of the year 1920, N. P. Sloan & Company was indebted to taxpayer in the sum of $91,492.92 on account of loans made to it, against which cotton was held as security. N. P. Sloan & Company failed during the year 1920, and at the close of the year taxpayer credited the loan with the estimated value of the cotton and charged off the balance as a bad debt. Subsequently, in the year 1921, the cotton was sold at $12,172.16 less than its estimated value on December 31, 1920, and taxpayer now claims that it should be permitted to take as a deduction in 1920 the entire amount of the difference between the amount of the loan to N. P. Sloan & Company and the amount realized from the sale of the security.

It is the opinion of the Board that, under the circumstances as disclosed by the record, taxpayer was not entitled to charge off as a bad debt in 1920 the amount owing to it by N. P. Sloan & Company or any part thereof. The debt was not worthless in that year although its value was impaired. Taxpayer had security for at least a part of the amount owing to it. It did not take steps in that year to dispose of the security and ascertain what part of the debt, if any, was incapable of collection, but merely estimated the value of the security, credited the loan with such estimated value and continued

to hold the security until 1921. The transaction was not closed until 1921 and it can not be said that the debt was ascertained to be worthless in 1920. Whether or not it became worthless thereafter is not before the Board and we express no opinion on that question.