FIRST NATIONAL BANK OF ST. PAUL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11745.  Promulgated January 19, 1928.

*A. E. Horn, Esq.*, for the petitioner.
*James A. O'Callaghan, Esq.*, for the respondent.

OPINION.

LITTLETON: The claim advanced by the petitioner is that it is entitled to a deduction under section 234 (a) (5), Revenue Act of 1921, on account of certain Russian bonds purchased as an investment and which it claims were " debts ascertained to be worthless " in 1921 within the meaning of the statute. The Revenue Act of 1921, as well as the 1918 Act and the acts subsequent to 1921, provide for deductions on account of " losses sustained " and also for " debts ascertained to be worthless." In *Appeal of Emil Stern and Jules Stern*, 5 B. T. A. 89, the Board said:

The Revenue Act of 1918 provides for the deduction of both debts ascertained to be worthless and losses sustained. If a debt becomes worthless, it would seem that a loss has been sustained. Debts, however, are deductible in the year in which they are ascertained to be worthless and charged off, which may be other than the year in which they in fact became worthless. Since it can not be assumed that a double deduction was intended, it would appear that, if a debt became worthless in one year, but was not ascertained by the taxpayer to be worthless until the following year, deductions could not be taken for a loss in the first year and for a bad debt in the second. Furthermore, a loss may be sustained upon account of an indebtedness without any ascertainment of worthlessness, as for example, the embezzlement of negotiable securities. In that case, a loss may be sustained in the year of the embezzlement, although there has been no ascertainment that the debt itself is worthless.

It becomes necessary, therefore, in every case to distinguish between a loss sustained and a debt ascertained to be worthless.

That is, the two classes of losses are separate and distinct, and it is necessary in each instance to determine whether the deduction must meet the requirements of the " loss " provision or the " bad debt " provision. Cf. *Electric Reduction Co.* v. *Lewellyn*, 8 Fed. (2d) 91; 11 Fed. (2d) 493, and a decision rendered by the Supreme Court in the same case, 275 U. S. 243.

The question here is whether an investment by petitioner in a bond which may in the broad sense be said to represent a debt owing to the petitioner is a debt on account of which, when the debtor fails to pay, the petitioner must satisfy the requirements of the " loss " provision or the " bad debts " provision, in order to become entitled to a deduction from gross income. When Congress provided for the two classes of losses, it does not seem reasonable to suppose that it was intended that all kinds of debtor-creditor relationships which come within the legal definitions of " debt " may be considered as

coming within the class of debts which are allowable as deductions under section 234 (a) (5), which provides as follows:

(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \* \*

(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the Commissioner, a reasonable ·addition to a reserve for bad debts) ; and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

To the business man a debt owing to him would usually connote something in the nature of an obligation arising on account of goods or other property sold on credit or money loaned. On his books of account, these debts would be carried as accounts or notes receivable. But an entirely different conception exists with respect to the owner-ship of a bond, such as United States Liberty bonds, or bonds of a foreign government such as gave rise to this proceeding, ordinarily bought as investments, though in a strict legal sense, the bond is no less a debt than the account receivable. The bonds involved in this proceeding were acquired by petitioner bank as an investment in the same manner that shares of stock or real estate might be acquired, but does the fact that such .an investment is in a debt instead of in real estate or stock make necessary the conclusion that a loss on one is to be treated under one section of the Act and the other under another? What Congress had in mind as bad debts is indicated under the 1921 Act and subsequent acts by the provision in the "bad debt" subsection for a "reasonable addition to a reserve account."

Among business men who sell on credit, and thus have on their books at the end of a year a large number of accounts, it is a recog-nized practice, supported by good accounting, to set up a reserve at the end of the year to take care of the percentage of these debts, which, on the basis of their past experience, will be uncollectible. Such a reserve is classified in accounting as a "Reserve for Bad Debts." But we fail to find a business practice or accounting author-ity which would include in such a reserve an amount on account of bonds or other obligations which had been purchased as an invest-ment, but which, from past experience, might be collected only in part. One reason for this is that the business man who sells on credit does so with the realization that all accounts outstanding will probably not be collected and, therefore, when on the accrual basis, he is justified in charging the profits of the year in which these ac-counts were created with the probable losses which he will suffer. We think a different situation exists with respect to investments, particularly corporate or government bonds. Here, losses are suf-fered or gain is realized when the property is disposed of. *New York*

*Life Insurance Co.* v. *Edwards*, 271 U. S. 109; *Corn Exchange Bank*, 6 B. T. A. 158; *W. P. Davis*, 6 B. T. A. 1267. A reserve might be set up to take care of decline in market value, but certainly the statute does not contemplate a deduction on account of anything of this nature. Total or partial worthlessness is the unusual situation in investments, such as we are here concerned with, whereas it is the usual situation with respect to some of the debts which the average business man creates in the conduct of his affairs. A reserve with respect to the former, if one should be set up, would be denominated something like a " Reserve for Contingent Losses," whereas the latter would be a " Reserve for Bad Debts."

Due to the many complexities and intricacies of business methods and transactions, it would, of course, be impracticable, if not impossible, to define a debt such as would be deductible under section 234 (a) (5), Revenue Act of 1921, when determined to be worthless. The Board, however, is of the opinion that the investment which the petitioner had in Russian bonds is not such a debt as is contemplated by the aforementioned section of the statute, and that any loss suffered on account of such an investment can only be taken as a " loss sustained " under subsection (4) of the same section.

The next question is whether the petitioner sustained a loss in 1921 on account of this investment. While the bonds may have had a less value at December 31, 1921, than at January 1, 1921, though this is not established, the evidence certainly does not justify the conclusion that a loss has been sustained on the bonds in 1921 when the bonds were being sold on the New York Curb at approximately 13½ per cent of their face value. The petitioner did not sell at this or any other price, but retained the bonds, apparently with the hope that a change of events might result in a better price being realized, and this is probably true still. Although the petitioner was advised that it might not be able to realize 13½ per cent if it attempted to sell its entire holdings in a single block, it does not appear but that this price or substantially this price could have been realized on the bonds if they had been sold in smaller blocks. Under such circumstances, the Board can not say that a loss has been sustained on this investment, *New York Life Insurance Co.* v. *Edwards, supra; Corn Exchange Bank, supra.* The petitioner's claim for a loss of the entire cost of the bonds or any part thereof is therefore denied.

The conclusion reached is not inconsistent with the conclusions reached in *Appeal of Murchison National Bank*, 1 B. T. A. 617, and *Appeal of Samuel Bird*, 4 B. T. A. 259, relied on by the petitioner, since in those cases the Board considered the evidence submitted sufficient to justify the conclusion that the bonds were worthless in the year in which the deductions were allowed.

Even if the bonds in question were treated strictly as a debt within the meaning of section 234 (a) (5) of the Revenue Act of 1921, the Board is nevertheless of the opinion that petitioner is not entitled to the deduction claimed in 1921. On this theory the question here would be whether a taxpayer may charge off the entire amount of a debt as a deduction in 1921 when the debt is not then ascertained to be entirely worthless and when the evidence indicates that the events relative to complete or partial worthlessness occurred in greater part, as least, prior to the beginning of the taxable year. It appears that on January 21, 1918, the so-called Workers and Peasants Government, which had superseded the Imperial Russian Government, repudiated the bonds of the Imperial Russian Government which were then held by the petitioner. Of one issue of bonds, of which the petitioner held $200,000 face value, the maturity date was June 18, 1919, and no payment was made at this time or has subsequently been made to petitioner. The other issue matured on December 1, 1921, at which time there was likewise no payment of the principal. The parties have stipulated that no interest was paid on the issue of which the petitioner held $200,000 subsequent to January 1, 1919, and on the other issue subsequent to June 1, 1919. These facts, which occurred prior to 1921, except the maturity date of one issue, were known to the petitioner prior to 1921, and cognizance was taken of them by charge-offs on its books made on each issue beginning in 1918 and continuing through 1920. On the issue of which the petitioner held $200,000, the petitioner had charged off $175,000 prior to 1921, and on the other issue $20,650 of a total cost of $28,150. The amount left on its books at January 1, 1921, was, therefore, only $32,500. The testimony of the petitioner's witness was that at the end of 1921 these bonds were selling on the New York Curb at approximately 13½ per cent of their face value. Although the petitioner was advised that it might not be able to realize this price, if it attempted to sell its entire holdings in a single block, it does not appear but that this amount, or substantially this amount, could have been realized on the bonds if they had been sold in smaller lots. This would have meant a realization of $31,050 on bonds which it carried on its books at the beginning of the year at $32,500.

Under this state of facts, we fail to find any justification for allowing a deduction, either on account of the entire debt having been ascertained to be worthless or from the fact that any part of the debt was ascertained to be worthless during 1921 under section 234 (a) (5), Revenue Act of 1921.

Certainly it could not be said that the entire debt was ascertained to be worthless in 1921 when the evidence of record shows that the fact ascertained was that the debt was yet of value. That the bonds

might have been worthless prior to 1921 is not material. We are here concerned with the year 1921, and the evidence certainly does not justify the conclusion that in 1921 there was any determination or ascertainment that these bonds were worthless.

A similar situation exists with respect to partial worthlessness. While the provision in the Act with respect to a partial write-off of a debt does not permit a deduction merely on account of a depreciation in market values of securities, the action of the petitioner in reducing the values of these bonds on its books to a small percentage of their value, due to a decline in market values, indicates that whatever partial worthlessness had resulted, took place prior to 1921. Apparently, after the bonds were repudiated in 1918 the payment of interest ceased. There was thereafter merely the hope that conditions might so change in Russia, that a government would come into existence which would recognize these obligations, and this same condition existed in 1921. Cf. *S. S. White Dental Mfg. Co.* v. *United States*, 274 U. S. 398.

As far as the record shows, the only difference between 1921 and the years immediately preceding was that, with the passage of time, conditions were not improving in Russia. As the petitioner expresses it, " the older they (bonds) got the worse they got." But was there an ascertainment in 1921 that there was less likelihood of the bonds being paid than had already been ascertained prior to 1921? The only event transpiring in 1921 was that the issue of which the petitioner held the smaller amount matured in December, 1921, and at this time no part of the principal was paid. This could hardly be considered of importance when the obligation had been repudiated more than three years ago, and payment of interest had ceased. Even conceding that with the lapse of time the bonds depreciated in value and hopes of collection waned, we fail to see that the evidence justifies the conclusion that there was in 1921 even a partial ascertainment of worthlessness, based upon facts which petitioner had not known in prior years, which would permit a deduction under section 234 (a) (5). And even though the statute in force prior to 1921 did not recognize a partial deduction for a bad debt, the extent of worthlessness ascertained prior to 1921 can not be taken as a deduction in 1921 when entire worthlessness has not been ascertained. In *Appeal of Murchison National Bank*, 1 B. T. A. 617, the Board said:

The ascertainment of the worthlessness of a debt and the charge-off thereof must occur within the same taxable year, otherwise a taxpayer could defer charging off a debt, known to be worthless, until such time as it would be the greatest benefit to him in effecting a reduction of his tax liability.

See also *Avery* v. *Commissioner*, 22 Fed. (2d) 6 (C. C. A., 5th Cir.).

To permit the entire cost, or any part thereof, as a deduction, in this case, in 1921, would be to allow the deduction in the year of the

final charge-off without regard to the considerations that the bonds were not determined to be worthless in 1921, and that the ascertainment of worthlessness which existed in 1921 had been accomplished to almost, if not entirely, the same extent prior to 1921, *Simon Kohn*, 8 B. T. A. 547.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MARQUETTE and ARUNDELL concur in the result.

SMITH and TRUSSELL dissent.