GEORGE HYMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54674. Promulgated August 22, 1933.

*R. Kemp Slaughter, Esq.*, for the petitioner.
*J. M. Morawski, Esq.*, for the respondent.

---

OPINION.

STERNHAGEN: The Commissioner determined a deficiency in the petitioner's income tax for 1928 of $17,357.74, by applying section 115 (g), Revenue Act of 1928[1] to the redemption and cancellation of shares of stock owned by the petitioner, and thus taxing a part of the amount received by the petitioner as an ordinary dividend. The petitioner contends that section 115 (g) does not apply, and the entire amount of $195,000 received by him by virtue of such redemption was a distribution in liquidation covered by section 115 (c),[2] and that since it was no more than the cost of the stock redeemed, there is nothing to tax. All of the facts in the record are agreed upon in writing as follows:

1. The petitioner resides in the City of Washington, District of Columbia, with his business address at 1010 Vermont Avenue, Northwest. For the calendar year 1928 petitioner filed his income tax return with the Collector of Internal Revenue at Baltimore, Maryland, and included therein the income of his wife.

2. On February 12, 1931, the respondent mailed to the petitioner a notice of deficiency covering the calendar year 1928 which determined a deficiency against petitioner in the amount of $17,357.74. Against the aforesaid notice of deficiency petitioner duly filed his petition for a redetermination to which was attached as Exhibit A a copy of the notice which by reference is hereby made a part hereof.

3. The petitioner, at December 31, 1928, was President of George Hyman Construction Company and President of George Hyman Properties, Inc.

4. At December 12, 1928, the George Hyman Construction Company, a Maryland corporation with its principal offices in Washington, D.C., had outstanding 2,000 shares of capital stock at the par value of $200,000. Of this outstanding stock petitioner owned 1998 shares for which he had paid, prior to January 1, 1928, but subsequent to March 1, 1913, $199,800 in cash. The business of George Hyman Construction Company was that of general contractor in the construction of public and private buildings.

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

[2](c) *Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

5. On December 11, 1928, George Hyman Properties, Inc. was incorporated under the laws of the State of Maryland with an authorized capital of 2,000 shares of common stock of the par value of $100 of which authorized stock 50 shares were immediately issued for cash at par. Of this issue the petitioner took 30 shares, his wife 5 shares, his attorney 5 shares, and the remaining 10 shares were taken in equal proportion by his sister and his mother-in-law. This corporation was organized as an investment company to take over certain real properties and stocks and bonds which petitioner, as principal stockholder of George Hyman Construction Company, considered were not necessary in the construction business and should not remain at the risk of that business.

6. On December 12, 1928, the George Hyman Construction Company paid petitioner by check No. 3522 the sum of $195,000 for 1950 shares of its stock held by petitioner as aforesaid, and the 1950 shares of stock so redeemed were retired and cancelled by the corporation. There was no change in the shareholdings of the other stockholders and the capital stock of the company then outstanding was $5,000.

7. On December 19, 1928, petitioner advanced to George Hyman Properties, Inc., the sum of $190,000. With the cash capital thus obtained and through the issue of its common stock as aforesaid, George Hyman Properties, Inc. acquired certain real properties and stocks and bonds from George Hyman Construction Company which petitioner, as aforesaid, considered were not necessary assets in the construction business and therefore should not remain at the risk of the construction company.

8. The books of account of the George Hyman Construction Company show that at December 31, 1927, it had an earned surplus of $119,709.33; at December 31, 1928, an earned surplus of $109,729.54, and at December 31, 1929, this earned surplus had been reduced through operations to $55,270.85.

9. The respondent, in the aforesaid notice of deficiency, alleges that to the extent of the earned surplus of George Hyman Construction Company at December 31, 1928, to-wit, $109,729.54, petitioner received a taxable dividend in the payment to petitioner of $195,000 on December 12, 1928, when petitioner surrendered to the corporation 1950 shares of its capital stock which petitioner had acquired from the corporation at its incorporation for the sum of $195,000. No other exceptions were taken by the respondent to the income tax returns filed by petitioner for the year 1928.

We think that it cannot be said from these facts that the respondent was wrong. The petitioner was the sole shareholder of a corporation with a substantial surplus at the beginning of 1928. By causing the corporation to cancel 97½ percent of its shares at par, he receives an amount greater than the entire surplus. Thus, as to the amount of the surplus, he is in no different situation from what he would have been in had there been an ordinary dividend; and the only difference to the corporation is that it has a reduced capital, which is now represented by an outstanding 50 shares instead of 2,000. From such facts it is just as conceivable that the redemption and cancellation were essentially equivalent to a dividend as it is that they were not; and, since the respondent has determined that they were, and the burden of proof is on petitioner, we cannot affirmatively find that it was not.

The petitioner argues that he had a proper motive, and that he properly used this means of having the real property, stocks and bonds which he considered unnecessary to the corporation's construction business transferred to the newly organized corporation. This, we think, is beside the point. What was said in *Pearl B. Brown, Executrix*, 26 B.T.A. 901, to the effect that the section should not be applied to a stock redemption " where the circumstances are free from artifice and beyond the terms and fair intendment of the provision," did not mean that absence of moral obliquity or intent to evade tax would alone be a defense to the respondent's determination under the section. The statute is concerned with imposing the tax where there is the essential equivalent of a dividend. This is not determinable alone by the use made of the distribution when received. The shareholder might intend to use it for a most laudable charitable purpose, and immediately put it to such use, and yet be subject to the tax as upon a dividend if it was essentially the equivalent of a dividend. If the respondent determines that the distribution is within section 115 (g), the taxpayer must point to something in the circumstances which requires the conclusion that it was substantially and essentially different. This we are unable to find in the facts, and so can find no error.

*Judgment will be entered for the respondent.*