BEEKMAN WINTHROP, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 79850. Promulgated July 13, 1937.

*Russell L. Bradford*, Esq., and *George H. Craven*, Esq., for the petitioner.
*John D. Kiley*, Esq., for the respondent.

OPINION.

SMITH: This proceeding involves a deficiency in petitioner's income tax for the calendar year 1932 in the amount of $1,037.02. The only allegation of error is with respect to the respondent's disallowance of a capital loss deduction of $4,891.87 claimed on the liquidation of a corporation of which the petitioner was a stockholder.

The petitioner in 1932 was the owner of 4,500 shares of the capital stock of the Lackawanna Securities Co., hereinafter referred to as the Securities Co., which he had held for more than two years and which had a cost basis to him of $169,716.12.

The Securities Co. was a Delaware corporation organized in 1927 by the Delaware, Lackawanna & Western Railroad Co., hereinafter referred to as the Railroad Co., to take over and hold $58,500,000 face value of first mortgage bonds of the Glen Alden Coal Co., which the Railroad Co. had received in part payment for certain coal lands purchased from it by the Glen Alden Coal Co. In exchange for these bonds the Securities Co. gave 844,411 shares of its own capital stock which were distributed pro rata to the stockholders of the Railroad Co.

The Securities Co. never owned any other assets than the Glen Alden Coal Co. bonds and the interest received thereon, and never engaged in any other business activities.

On June 30, 1932, a resolution was adopted by the board of directors of the Securities Co. providing for the liquidation of the Securities Co. and the distribution of its assets to its stockholders. The resolution provided for the pro rata distribution of the Glen Alden Coal Co. bonds to the stockholders of record at the close of business on July 25, 1932. It further provided for a distribution to the stockholders of scrip certificates for fractional units of bonds and other certificates entitling the stockholders to receive proportionate interests "in final liquidation distribution, if any, to the Company's stockholders as of record at the close of business, July 25th, 1932."

The liquidation and dissolution of the Securities Co. were approved by the stockholders at a meeting held August 2, 1932. Thereafter, the company engaged in no activities except those in connection with its liquidation. Written notices were sent to the stockholders requesting them to send in their stock certificates on August 18, 1932, and informing them that the bonds and certificates would be available for distribution on that date.

The parties hereto have stipulated as follows:

On July 25, 1932, the Lackawanna Securities Company had outstanding 841,500 shares of capital stock; and the only property owned by it was the said $51,000,000 of bonds of Glen Alden Coal Company and $382,958.79 in cash representing accumulated interest and payments on account of principal of said bonds, which cash was reserved for use in paying taxes and other expenses and the costs of dissolving said corporation. It was estimated by the officers of the corporation at that time that after paying said taxes, expenses and costs of liquidation and dissolution, the balance remaining for distribution to the stockholders under the terms of said liquidation certificates would be 20 cents for each share of the stock surrendered, and that accordingly the value of the

**316**

said certificates was 20 cents for each share with respect to which they were issued.

The aforesaid plan of liquidation and dissolution was duly carried out, and pursuant thereto the petitioner, Beekman Winthrop, on or about August 18, 1932, surrendered to said corporation the aforesaid 4500 shares of stock which had been held by him for more than two years, and on or about August 18, 1932, in exchange therefor received bonds of Glen Alden Coal Company and scrip certificates for a fractional interest therein, of the face amount of $272,727.27. The said bonds and participation certificates therein had a fair market value on August 18, 1932, of $58.25 per $100 of face value thereof, a total fair market value of $158,863.64 for the obligations received by the petitioner. The accrued interest on said bonds at the time of their receipt by the petitioner on August 18, 1932, amounted to $5,060.61.

The petitioner on or about August 18, 1932, received also a certificate showing that he had surrendered 4500 shares of said stock and was entitled to receive as a final liquidation distribution, if any, from said corporation his proportionate interest in such distribution. The petitioner and the officers of said corporation estimated that said liquidation certificate had a value at that time of 20 cents for each share of stock with respect to which it was issued, a total value of $900.00 for the certificate issued with respect to the petitioner's said 4500 shares. A true specimen of the liquidation certificate issued to stockholders of said corporation with respect to their stock is hereto attached, marked "Exhibit A", and made a part hereof.

Exhibit "A" reads as follows:

LACKAWANNA SECURITIES COMPANY

This is to certify that there have been surrendered to Treasurer of Lackawanna Securities Company certificates

*Numbers*                                                    *Shares*

of the capital stock of Lackawanna Securities Company registered as shown hereon, upon which the said registered holder is entitled to receive proportionate interest in final liquidation distribution, if any, to the company's stockholders, as of record at the close of business, July 25th, 1932.

G. W. WILDEY, *Treasurer.*

It is further stipulated:

The duly executed and attested consent in writing to the dissolution of the Lackawanna Securities Company, of more than two-thirds in interest of all the stockholders of said corporation, in the form required by the laws of Delaware, was forwarded by the officers of said corporation on December 31, 1932, to its fiscal agent in Delaware for filing in the office of the Secretary of State of the State of Delaware. The said consent was duly filed in the office of the Secretary of State of the State of Delaware on January 7, 1933, and on that date the said Secretary of State issued a certificate of the dissolution of said corporation. * * *

On January 30, 1934, a final distribution was made to the holders of said liquidation certificates of Lackawanna Securities Company of 20 cents for each share of stock with respect to which said certificates had been issued, a total distribution of $168,300.00 on said 841,500 shares, which was the only distribution made to said former stockholders after said distribution of August 18, 1932. The petitioner held his said liquidation certificate at all times until January 30, 1934, and on said distribution received $900.00 as his share thereof.

The said distribution left a balance of cash of $6,043.24 in the hands of the corporation, which balance is arrived at as follows:

Cash balance December 31, 1932_____ $250,509.21
Interest on deposits after December 31, 1932_____ 720.30

$251,229.51

Income, franchise and other taxes paid_____ $62,362.37 .
Salaries, directors' fees, legal and miscellaneous expenses paid_____ $14,523.90
Final liquidation payment of 20 cents per share_____ 168,300.00
$245,186.27

Cash balance_____ $6,043.24

The said cash balance of $6,043.24 will be used to pay such other and further expenses of the corporation as may arise, including the expenses of an equity receivership proceeding in Delaware to dispose finally of all assets held for delivery to stockholders who have not presented their stock certificates for redemption and cancellation. Since the said cash balance amounts to less than one cent for each of said 841,500 shares of stock, those in charge of the affairs of said corporation do not intend to make any further distributions on said stock.

The respondent first ruled in a letter dated January 28, 1933, addressed to the attorney for one of the stockholders of the Securities Co., that the liquidation of the Securities Co. took place in 1932, and that any losses sustained thereon by the stockholders should be taken in that year. In 1935 he issued G. C. M. 14207, Cumulative Bulletin XIV-1, p. 68, which reads in material part as follows:

The taxable year in which a loss is sustained by a stockholder due to liquidation of a corporation was considered by the Court of Claims in *Dresser et al.* v. *United States* (55 Fed. (2d), 499, C. B. XI-1, 267, certiorari denied, 287 U. S. 635). In that case the stockholder contended that he had sustained a deductible loss at a time when the corporation had not disposed of all its assets and there was no proof of the value or lack of value thereof at that time, but the court held that the alleged loss was not at such time susceptible of determination since the stock was not without value. (Compare article 174, Regulations 77). The Revenue Act of 1918 which governed that case contains provisions for loss deductions substantially the same as the provisions of later Acts. The court said in that case:

\*          \*          \*          \*          \*          \*          \*

"\* \* \* Losses are sustained within the meaning of the taxing Act when the events definitely occur which give rise thereto. \* \* \* The statute allows the deduction of a loss when it has been sustained, and we think it is the clear purpose of the Act to allow the *deduction in the year in which it may appear that the taxpayer has received from the property all that it is possible for him to receive.* A stock loss is no different from a loss on any other property, and if a taxpayer acquires property at a certain cost which has not been disposed of he may not take a deduction from gross income as a loss of any amount merely because it may appear that when the property is finally disposed of he will receive less than what he paid for it. \* \* \* *Partial losses are not allowable as deductions from gross income so long as the stock has a value and has not been disposed of.* Of course, where a corporation is in process of liquidation and there are assets of substantial value

upon which large amounts may be realized by the liquidating trustees, a loss may be taken by the stockholder upon definite proof that outstanding liabilities and claims superior to those of the stockholder will more than absorb the maximum amount that can be received from the disposition of the assets, thereby leaving nothing for the stockholder. * * * But such a situation is just the reverse of the claim presented by the plantiffs in this case. * * *

The petition is dismissed. * * * [Italics supplied.]"

In that case it does not appear definitely whether the stock was surrendered or canceled or whether the stockholder received a participation certificate in lieu of his stock, but in the view taken by this office that factor is not conclusive. The stockholder who received bonds and a participation certificate in the instant case had a continuing interest which was not worthless and which was terminated either when the participation certificate was disposed of or when he received the final distribution in liquidation in 1934. At such time the stockholder sustained a loss if the total amount realized was less than the basis of his stock. Until then his "property" was not "disposed of", and only then, did he receive from the property "all that it is possible for him to receive," within the meaning of the decision in the Dresser case. Only then was there a closed transaction. (Article 171, Regulations 77.) This result is not changed by the fact that the final distribution in liquidation was previously correctly estimated.

Section 23 (e) of the Revenue Act of 1932 provides in part as follows:

(e) LOSSES BY INDIVIDUALS.—Subject to the limitations provided in subsection (r) of this section, in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—

(1) if incurred in trade or business; or

(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * *

Section 111· of the same act provides in part:

SEC. 111. DETERMINATION OF AMOUNT OF GAIN OR LOSS.

\*         \*         \*         \*         \*         \*         \*

(b) AMOUNT REALIZED.—The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received.

Section 115 provides in part:

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. * * *

The evidence shows that in 1932 the petitioner surrendered his shares of stock in the Securities Co. and received in exchange therefor bonds of the Glen Alden Coal Co. and a "liquidation" certificate evidencing his interest in the undistributed assets of the corporation. At the time he received the bonds and the liquidation certificate the Securities Co. had on hand cash in excess of $300,000. The officers

of the corporation and the petitioner knew that on his liquidation certificate he would receive an additional distribution of approximately 20 cents per share. This is the amount that he actually did receive in 1934. The petitioner contends that he sustained a loss upon his investment in Securities Co. stock measured by the difference between the cost to him of the shares and the stipulated value of the Glen Alden Coal Co. bonds received, including accrued interest plus $900, the value of the liquidation certificate.

The taxing statute permits the deduction of losses sustained. Ordinarily, a deductible loss based upon an investment in the shares of stock of a corporation which is being liquidated must be determined upon the basis of a closed and completed transaction. In *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398, the question before the Court was whether the taxpayer could deduct from its gross income of 1918 a claimed loss upon the ground that property had been seized by the German Government. The United States contended that the taxpayer had a claim against the German Government and might secure from it satisfaction for the property which had been seized. In its opinion the Court stated:

The case turns upon the question whether the loss, concededly sustained by the respondent through the seizure of the assets of the German company in 1918, was so evidenced by a closed transaction within the meaning of the quoted statute and treasury regulations as to authorize its deduction from gross income of that year. The statute obviously does not contemplate and the regulations (article 144) forbid the deduction of losses resulting from the mere fluctuation in value of property owned by the taxpayer. *New York Ins. Co.* v. *Edwards*, 271 U. S. 109, 116, 46 S. Ct. 436, 70 L. Ed. 859, cf. *Miles* v. *Safe Deposit Co.*, 259 U. S. 247, 42 S. Ct. 483, 66 L. Ed. 923. But with equal certainty they do contemplate the deduction from gross income of losses, which are fixed by identifiable events, such as the sale of property (article 141, 144), or caused by its destruction or physical injury (article 141, 142, 143), or, in the case of debts, by the occurrence of such events as prevent their collection (article 151).

In *Lucas* v. *American Code Co.*, 280 U. S. 445, 449, it was said: "The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal test." Cf. *Dayton Co.* v. *Commissioner*, 90 Fed. (2d) 767.

For all practical purposes the petitioner's shares of Securities Co. stock were completely liquidated in 1932, notwithstanding the withholding by the corporation of the cash necessary to liquidate its obligations, and the subsequent distribution of the small amount of 20 cents per share. The substantial liquidation of the Securities Co. made the loss sustained by the petitioner "reasonably certain in fact and ascertainable in amount", *Lucas* v. *American Code Co.*, *supra*, in 1932.

The facts in this case are different from those which obtained in *Dresser* v. *United States*, 55 Fed. (2d) 499, relied upon by the re-

spondent in G. C. M. 14207, *supra*. The corporation involved in that case was not completely liquidated in 1919 and the Court of Claims found that the corporation had valuable intangible assets, the amount of which it was unable to determine.

The action of the respondent in disallowing the claimed loss deduction is reversed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*