Norman Cooledge,[1] Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 92289.   Promulgated June 20, 1939.

---

[1] Vacated; order dated July 11, 1939. See p. 1325.

*Edward R. Kane, Esq.*, and *Hilary H. Gardner, C. P. A.*, for the petitioner.

*Stanley B. Anderson, Esq.*, and *Elizabeth B. Fegan, Esq.*, for the respondent.

## OPINION.

DISNEY: This proceeding involves income tax for the year 1934. Petitioner filed income tax return with the collector of internal revenue for the district of Georgia. Deficiency was determined in the amount of $721.06, and respondent by amended answer asks increase thereof to the amount of $934.89. Two questions are presented: (a) As to disallowance of deduction claimed for accrued taxes and interest, and (b) as to application of sections 115 (c) and 117 (a), Revenue Act of 1934, in computation of net income received upon liquidation of shares of stock. The facts were stipulated (and the stipulation adopted as our findings of fact) and will be referred to only in so far as necessary to determination of the issues presented.

I.—Petitioner filed income tax return for 1934 on the cash receipts basis with the collector of internal revenue for the district of Georgia. On July 21, 1934, he sold to the Sterling Discount Corporation certain real estate in Atlanta, Georgia, and as a part of the purchase price the vendee agreed to pay all taxes and mortgage interest then or thereafter due upon the property, and in pursuance of said agreement did pay $4,017.68 ad valorem taxes and tax items, and $2,798.24 in discharge of interest on a mortgage upon the property, all of which had accrued against the property and against petitioner prior to date of sale. Respondent disallowed deduction by petitioner of such amounts, and disallowed deduction of loss which was taken by petitioner upon sale of the property, disallowance of the loss being by reason of section 24 (a) (6), Revenue Act of 1934, the petitioner having owned more than 50 percent of the stock of the vendee corporation. The vendee has not been allowed deduction of the above amounts.

Petitioner contends, in effect, that he, on a cash basis, paid the taxes and interest by virtue of the fact that the vendee, under numerous cases, is not entitled to deduction of the amounts paid by it; that therefore to deny deduction by petitioner-vendor is contrary to the intent of section 23, Revenue Act of 1934, providing for allowance of

taxes paid; that though the petitioner did not in person pay the taxes and interest, such payment in person is not necessary, the amounts being paid by the vendee as a part of the purchase price of the property sold; that the purchase price belonged to petitioner and therefore the taxes were paid with petitioner's funds; that the effect is the same as if full purchase price had been paid to petitioner and he had handed back to the vendee the amount of taxes and interest with directions to use same in making the payments. The respondent answers in effect that the payment of the taxes and interest by the vendee was on its part a capital expenditure and additional cost of the property, that petitioner did not in fact pay, that what was done, and not what might have been done, must control, that the fact that section 24 (a) (6) of the Revenue Act of 1934 prevents petitioner from being entitled to a loss on the sale is immaterial—the vendee being a corporation with entity separate from that of petitioner—and that therefore the disallowance was proper.

We think respondent's position must be sustained on this point, although *Falk Corporation* v. *Commissioner*, 60 Fed. (2d) 204, cited by him as authority, does not, we think, sustain him, because of an obvious typographical error pointed out by petitioner. Nevertheless, we do not agree that it follows, as petitioner argues, that, because in that case the court also stated that "he [the vendee] cannot be considered a taxpayer," and that "we are convinced that Falk Company [the vendor] in fact paid the taxes in controversy, for it furnished to petitioner the money and property with which to make the payment", that the vendor herein is entitled to deduction. Petitioner did not, in fact, pay the taxes or interest, and he was on a cash basis of accounting. He might have made a contract of sale providing that he pay the taxes, or providing that the vendee pay taxes as his agent and with his money, out of the purchase price; but he did not do so. Actually, he sold property for a purchase price, a part of which was payment of accrued interest and taxes by the vendee. That contract did not constitute the vendee the vendor's agent or attorney in fact to pay such taxes and interest, but served rather merely to deduct the amount thereof from the purchase price. In the absence of the element of actual agency to pay taxes, we think the interest and taxes were investment in the property by the vendee, and it can add them to its base upon resale. *California Sanitary Co., Ltd.*, 32 B. T. A. 122; *Falk Corporation* v. *Commissioner, supra.*

In *Falk Corporation* v. *Commissioner, supra*, the court did not have before it the vendor nor the question of its income taxes or deductions, and anything said as to the position of the vendor is necessarily dictum. The court indicates plainly, we think, that it is holding merely that *in effect* the vendor paid the taxes, or rather that "petitioner has not

brought itself within the statutes because in reality it has paid no tax in the true sense of that word." Moreover, it appears that in that case the vendor transferred its corporate assets to vendee for its entire capital stock and that vendee "also assumed and agreed to pay the liabilities of Falk Company [vendor], including the state income tax", whereas herein only the ad valorem taxes and tax liens against the property (and interest on mortgage thereon) are involved, the amounts of which were a part of the purchase price of the property sold. We think that the cited case is not determinative here. Mere furnishing of funds is not payment of taxes. *Edward Hagelin*, 37 B. T. A. 8.

A vendor, though denied deduction for the amounts as interest and taxes, is nevertheless in the position of getting the benefit thereof, for by the amounts paid his sale price is lessened, to his benefit either in computation of gain or loss, for if he has gain, it will be less than if he had received a purchase price including the amount paid for interest and taxes, and if he has a loss, it will be the greater for the same reason. The accident that in the instant situation petitioner is denied loss (as he admits) because of owning more than 50 percent of the stock in the corporate vendee, under section 24 (a) (6), Revenue Act of 1934, is obviously immaterial. Nor do we find in *Carl K. Lifson, Administrator*, 36 B. T. A. 593, or the rulings of the respondent, any support for petitioner's theory, for all depend upon *payment*—and taxpayer did not pay the interest or taxes here. We conclude and hold that petitioner is not entitled to deduction of the amounts paid by his vendee for interest and taxes.

II.—During 1934 petitioner received $59,064.82, or $22.39 per share, in complete liquidation of 2,638 shares of stock owned by him in the Finance Co. of the South, a corporation. The cost or other basis of the stock and date of acquisition thereof were as follows:

| Date of acquisition | Shares | Cost or other base |
|---|---|---|
| 1921–1926 | 1,080 | $17,622.36 |
| 1926 | 35 | 875.00 |
| 1930 | 1,523 | 38,075.00 |
| Total | 2,638 | 56,572.36 |

In the deficiency notice, respondent charged petitioner with a gain of $2,492.46, but by amended answer seeks to charge petitioner instead with a net profit of $4,137.28, a figure reached by deducting, from gain on the stock acquired prior to 1926, recognizable losses on the blocks acquired thereafter, as shown above, resulting in a proposed increase of deficiency from $721.06 to $934.89. The change in respondent's theory is to a view that gain or loss, instead of being com-

puted on the stock as a whole as originally treated, should be determined separately on each block of stock, according to the length of time the stock was held by petitioner, that *gains* should be taxed in their entirety under section 115˙ (c), Revenue Act of 1934,[1] and that the amount of deductible losses should be limited to the percentages set forth in section 117 (a)[2] of that act. Petitioner contends that his taxable gain is the difference between the total basis of his three blocks of stock and aggregate amount distributed to him in 1934 in complete liquidation, as originally determined by the respondent.

We think respondent's construction of the applicable statutory provisions is correct. The statute, section 115 (c), provides first that amounts received in complete liquidation shall be treated as in full payment in exchange for the stock; next that gain or loss from the exchange shall be determined under section 111 and recognized to the extent provided under section 112; and then that 100 percent of "the *gain* so recognized" shall be taken into account in computing net income, despite section 117 (a), which provides that of the loss or gain recognized, only certain percentages thereof shall be taken into account in computing net income (depending upon length of time the capital asset has been held). It is apparent from these provisions of the statute that gain or loss on liquidation distributions is to be computed in the same manner as sales. *White* v. *United States*, 305 U. S. 281; *Helvering* v. *Weaver Co.*, 305 U. S. 293. On the basis that "a distribution in liquidation of a corporation is treated in the same manner as a

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117 (a), 100 per centum of the *gain* so *recognized* shall be taken *into account in computing net* income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

[2] SEC. 117. CAPITAL GAINS AND LOSSES.

(a) GENERAL RULE.—In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net income:

100 per centum if the capital asset has been held for not more than 1 year;

80 per centum if the capital asset has been held for more than 1 year but not for more than 2 years;

60 per centum if the capital asset has been held for more than 2 years but not for more than 5 years;

40 per centum if the capital asset has been held for more than 5 years but not for more than 10 years;

30 per centum if the capital asset has been held for more than 10 years.

sale of stock"—quoted by the Court from the report of the Senate Committee on Finance—in the *Weaver* case the Court held the limitation on losses provided by section 23 (r) (1), Revenue Act of 1932, to be applicable to losses on liquidating dividends; and in the *White* case held that section 101, Revenue Act of 1928, as to treatment of capital net losses, was applicable to losses on liquidating dividends. Section 115 (c), Revenue Act of 1934, requires that in case there is gain as thus determined, 100 percent thereof shall be taken into account in computing net income, but of *losses*, all, or only a certain percentage, depending upon the length of time the stock had been held, is recognized as deductible, under section 117 (a). The provision relating to gain was inserted in section 115 (c) to prevent avoidance of surtaxes in the liquidation of corporations with large surpluses. *Helvering* v. *Weaver Co., supra.*

Here the stock was acquired by petitioner during three periods, the first group of shares for $17,622.36, and the last two blocks at $25 per share, which was $2.61 per share in excess of the liquidating dividend of $22.39 per share. We assume from the stipulation and the absence of any controversy on the point that all of the stock purchased prior to 1926 had a cost basis of less than $22.39 per share.

If all of the stock had a basis of less than $22.39 per share, obviously gain would have resulted on each block surrendered in liquidating proceedings and the amount thereof would be the same whether computed as a unit or as three separate items of assets. But in view of the limitation provided in section 117 (a) on losses sustained on stock held in excess of one year and graduated for longer periods, it is imperative that a separate computation be made of gain or loss on each group of stock according to its classification in the statute; otherwise, its clear intent could not be applied to facts such as those before us here. This method is the natural result of the rule that liquidating dividends must be applied ratably to the entire number of shares held by each stockholder and not to a particular block, even though surrendered at the time of distribution. *Florence M. Quinn*, 35 B. T. A. 412; *Alvina Ludorff et al., Executrices*, 40 B. T. A. 32. If this taxpayer had sold the shares acquired in 1930, for example, his gain or loss would be the difference between cost and the amount realized upon sale at $22.39 per share and the tax result could not be deferred pending the disposition of the other blocks of stock. The situation is no different here because the three classifications of stock were disposed of at one time; each continued to have its own basis for tax computing purposes.

The case of *First National Bank et al., Executors*, 34 B. T. A. 631, involved the question of whether the stock was disposed of as a unit in one transaction or in two separate blocks and does not govern the

question here. The *Quinn* case, *supra*, involved a taxpayer with one block of stock and the theory upon which it was decided is opposed, rather than favorable, to the petitioner's contention.

The respondent's method of computing the net profit is sustained.

*Decision will be entered for the respondent.*