ETHEL M. SCHMIDT, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5824–67. Filed November 24, 1970.

*D. Paul Alagia, Jr.,* and *J. Bernard Brown,* for the petitioner.
*W. Gerald Thornton,* for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in the income tax of the petitioner for 1965 in the amount of $1,954.33. The only issue presented is whether petitioner is entitled to a capital loss deduction in 1965 on 812 shares of stock which she owned in the Highland Co.

#### FINDINGS OF FACT

Most of the facts have been stipulated and the stipulation, together with the exhibits attached thereto, is incorporated herein by this reference.

Petitioner Ethel M. Schmidt resided at 2147 Tyler Lane, Louisville, Ky., at the time the petition herein was filed. She filed an individual Federal income tax return for the calendar year 1965 with the district director of internal revenue at Louisville, Ky.

The Highland Co. was organized in 1949, under the laws of Kentucky, to engage in the construction business as a contractor or subcontractor. During the year 1965, the petitioner owned 812 of the total 1,353 shares of common stock of the Highland Co. issued and outstanding, 658 of which had been distributed to her by the administrator of her deceased husband's estate in 1951, and 154 shares had been purchased by her from a sister of her husband in 1950. Petitioner's husband died in 1949, and the 658 shares had a basis of $49,350, or $75 per share. The 154 shares obtained from her husband's sister had a basis of $13,090, or $85 per share. Petitioner's total tax basis in the 812 shares was $62,440.

On January 4, 1965, the stockholders of the Highland Co. unanimously adopted a resolution providing for the dissolution and liquidation of the assets of the Highland Co. A statement of intent to dissolve was prepared and filed (presumably with the secretary of state for the Commonwealth of Kentucky, though not definitely shown) in January 1965. All of the outstanding shares of the company were delivered by the stockholders to the secretary-treasurer of the company in 1965. The stock had not been formally canceled, however, nor had the company been finally and completely dissolved in 1965 or at the date of the trial herein.

By the end of the year 1965, the Highland Co. had substantially liquidated its assets, including all of its machinery and equipment, inventories, and other tangible personal property. The remaining assets of the Highland Co. on December 31, 1965, consisted of cash in the amount of $2,551.68 and "street warrants"[1] in the amount of $18,531.06 and other claims receivable from customers in the amount of $26,067.11 ($25,843.07 net of $224.04 reserve for bad debts). Oustanding liabilities were $4,281.10. A portion of these assets had been placed in the hands of an attorney for collection as they became delinquent. None of the remaining assets were of a type normally subject to appreciation in value.

Petitioner was the owner of the land and buildings at 644 Baxter Avenue on which the Highland Co. had conducted its business operations. She sold this property and relinquished possession to the purchaser on April 15, 1965. Petitioner realized a long-term capital gain in the amount of $24,059.50 upon the sale of the Baxter Avenue property.

---

[1] Presumably interest bearing bonds issued by the City of Louisville payable over a number of years out of assessments levied against the owners of properties abutting particular street improvements. See ch. 107, Ky. Rev. Stat. Ann. (Baldwin 1969).

By the end of the calendar year 1965, the Highland Co. had neither the assets (equipment), the employees, nor the place of operations with and from which to conduct its usual business in the construction industry.

The proceeds of the liquidation received by the Highland Co. during 1965 were applied in part to the payment of debts, and distributions aggregating $44,000 were made, pro rata, to the stockholders. The petitioner received $26,406.51 in liquidating dividends from the Highland Co. in 1965. The net worth, *per books*, of the Highland Co. as of December 31, 1965, was $42,644.71.

On her income tax return for the year 1965, petitioner claimed a long-term capital loss on her Highland Co. stock in the amount of $10,440.36, which was applied as an offset in part against the long-term capital gain ($24,059.50) realized by her upon the sale of the Baxter Avenue property. The amount of the long-term capital loss claimed on her Highland Co. stock represented the difference between her unrecovered basis ($36,033.49) and her proportionate interest ($25,593.13) in the remaining unliquidated assets of the corporation as of December 31, 1965, the computation of which took the street warrants at face value and the accounts receivable at book value, without consideration of any expenses incident to collection or of attorney's fees for the liquidation.

### OPINION

The ultimate issue to be determined herein is whether petitioner is entitled to a capital loss deduction in 1965 on the shares of stock which she owned in the Highland Co.

It was abundantly clear at the end of 1965, that had all the remaining assets of the company been liquidated and the amounts thereof distributed to its stockholders in 1965, petitioner would have sustained a loss on her stock in the Highland Co. Since she had realized a substantial capital gain on the sale of the Baxter Avenue property, it is to her advantage, taxwise, to have the potential loss on her Highland Co. stock recognized in 1965 and offset against her capital gain.

Respondent disallowed the deduction claimed by petitioner on her tax return for 1965 as a loss resulting from the liquidation of the Highland Co. on the ground that "it has not been established that any loss was sustained within the taxable year."

Petitioner alleged in her petition that the loss claimed for the year 1965 with respect to her shares of stock in the Highland Co. "was identifiable and determinable with reasonable certainty as a December 31, 1965."

At the trial, neither of the parties mentioned the statutes deemed applicable by them. On the basis of the pleadings and the facts pre-

sented, it might reasonably be assumed that petitioner was claiming a loss deduction on the shares of stock which she owned in the Highland Co. in 1965, on the ground that at the end of 1965 it was apparent that the most she could possibly receive from the liquidation of the Highland Co., in addition to the cash distribution, was $25,593.13, representing the maximum value of her interest in the remaining assets of the corporation, and accordingly that her loss was "identifiable and determinable with reasonable certainty as at December 31, 1965," and therefore deductible under section 165 of the Internal Revenue Code of 1954.[2] Respondent so treated the case on his opening brief. On brief, however, petitioner appears to have taken a position different from that referred to above. Her principal contention, as stated on opening brief, is that the loss claimed by her "is unquestionably authorized by both section 302 and section 331(a)(1) of the Internal Revenue Code." Alternatively she argues that she is entitled to a loss from partial liquidation of the corporation, under sections 331(a)(2) and 346.

Initially petitioner argues that she should be allowed the loss claimed on her Highland Co. stock in 1965 for the reason that: "It is the general policy of the code and of sound principles of accounting to offset income by the expenses incurred in producing it, and to offset gains by any losses which may have been incurred in connection with the same transaction." Pointing out that the property sold in April 1965 on which the large gain was realized, was the same property previously used by the Highland Co. in its construction business, petitioner argues: "Since this gain was made in the sale of property in the process of liquidating the business conducted by the Highland Company, that gain should be reducible by all the losses which were sustained in connection with the liquidation of that business." The obvious answer to this argument is that the Baxter Avenue property was owned by petitioner individually. She was not required to sell it because of the liquidation of the Highland Co., but could have leased it to another tenant had she chosen to do so. The sale of the Baxter Avenue property and the liquidation of the Highland Co. were entirely separate transactions.

Petitioner's next contention appears to be that "the transaction," shown by the facts presented, constituted a redemption of all the stock owned by her in the Highland Co., within the meaning of sections 302 and 317(b), and that petitioner is entitled to recognition of the loss thereon in 1965, to the extent provided by sections 1001(a) and 1002.

[2] All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Section 302 provides in pertinent part, as follows:

SEC. 302.  DISTRIBUTIONS IN REDEMPTION OF STOCK.

(a) GENERAL RULE.—If a corporation redeems its stock (within the meaning of section 317(b)), and if paragraph (1), (2), (3), or (4) of subsection (b) applies, such redemption shall be treated as a distribution in part or full payment in exchange for the stock.

(b) REDEMPTIONS TREATED AS EXCHANGES.—

*         *         *         *         *         *         *

(3) TERMINATION OF SHAREHOLDER'S INTEREST.—Subsection (a) shall apply if the redemption is in complete redemption of all of the stock of the corporation owned by the shareholder.

Section 317(b) provides:

(b) REDEMPTION OF STOCK.—For purposes of this part, stock shall be treated as redeemed by a corporation if the corporation acquires its stock from a shareholder in exchange for property, whether or not the stock so acquired is cancelled, retired, or held as treasury stock.

Petitioner argues that "the Highland Company acquired all of the stock owned by the petitioner and in exchange therefor it paid the petitioner $26,406.51 in cash plus petitioner's proportionate value of the remaining assets." This statement is not supported by the evidence. The word "acquires" as used in section 317(b) implies something more than mere possession of the certificates. It implies acquisition of the *beneficial ownership* of the stock. That such is its meaning is further demonstrated by the use of the qualifying phrase "in exchange for."

Although the certificates for all of the outstanding stock of the corporation were delivered to the secretary-treasurer of the company in 1965, the Highland Co. did not thereby *acquire* the beneficial ownership of such stock. Moreover, the distribution of $44,000 in cash to the stockholders in 1965, $26,406.51 of which was paid to petitioner, was not "paid" to the stockholders "in exchange for" all of their stock. This was a liquidating dividend and not consideration for the stock. Petitioner still owned an equitable interest in the remaining assets of the corporation which was substantially equivalent to the amount she had received as a liquidating dividend. She owned this interest by virtue of her stock ownership. It was not "paid" to her by the Highland Co. That the Highland Co. did not "acquire" ownership of all of petitioner's stock is further evidenced by the fact, as testified to by the secretary-treasurer, that the capital stock account of the company was not adjusted; the company did not report any treasury stock; the company had not been dissolved; and no stock certificates had been canceled as of the end of 1965.

In addition to the above, it does not appear that either paragraph (1), (2), (3), or (4) of subsection (b) of section 302 is applicable. Paragraphs (1), (2), and (4), relating to dividend equivalence, dis-

proportionate redemptions, and stock issued by railroad corporations, respectively, are clearly inapplicable. Paragraph (3) is not applicable for the reason that, even if it should be assumed that some of petitioner's stock was redeemed upon the distribution of the liquidating dividend in 1965, there was not a "complete redemption of all of the stock of the corporation owned by the shareholder."

We hold that the transaction disclosed by the evidence did not constitute a redemption within the meaning of sections 302 and 317(b).

Petitioner's contention that she is entitled to a capital loss deduction on her Highland Co. stock in 1965, under the provisions of section 331(a)(1), is likewise without merit.

Section 331(a)(1) provides as follows:

SEC. 331.  GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUI-
DATIONS.

(a) GENERAL RULE.—

(1) Complete liquidations.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock.

As a general rule, losses resulting from a complete liquidation will be recognized only after the corporation has made its final distribution. *Dresser* v. *United States*, 55 F. 2d 499, 511–512 (Ct. Cl. 1932), certiorari denied 287 U.S. 635 (1932) ; *Turner Construction Co.* v. *United States*, 364 F. 2d 525 (C.A. 2, 1966) ; Rev. Rul. 68–348, 1968–2 C.B. 141.

In *Dresser* v. *United States, supra,* which involved facts substantially similar to those in the present case, the court stated:

when it appears, as here, that it is reasonably certain that the stockholders will receive a further liquidating dividend, a loss may not be allowed under the taxing act until there is a distribution of such dividend in property or money.

The reason for this rule was explained by the court as follows:

Until this is done the stock has a value to its owner, and the mere fact that because the corporation is in process of liquidation its value has declined in a particular taxable year to a figure which is less than cost does not entitle the stockholder to elect in which year he will take his loss. It often happens, as here, that the liquidation of a corporation extends over a period of years and a decision that a loss may be taken upon the basis of a valuation of the unliquidated assets and an estimate of the remaining liabilities and expenses would enable the taxing authorities to place the loss in a taxable year in which the taxpayer might have a very small income and would enable the taxpayer to select a taxable year in which to take the loss in which he might have a large income and thereby obtain a greater benefit from the loss.

Certain exceptions to the general rule have been recognized by the courts where the stock is shown to have been worthless prior to complete liquidation, such as, for example, where the corporation's liabilities exceeded its assets, *Dresser* v. *United States, supra* at 512; *Industrial Rayon Corp.* v. *Commissioner*, 94 F. 2d 383 (C.A. 6, 1938), affirming a Memorandum Opinion of the Board of Tax Appeals; *Gowen* v. *Commissioner*, 65 F. 2d 923 (C.A. 6, 1933), affirming 24 B.T.A. 1028,

certiorari denied 290 U.S. 687 (1933) ; *Weintraub* v. *United States*, an unreported case (E.D. Pa. 1939, 26 A.F.T.R. 1183, 39-2 U.S.T.C. par. 9686) ; or where the losses are so reasonably certain in fact and ascertainable in amount as to justify their deductions before they were absolutely realized, *Lucas* v. *American Code Co.*, 280 U.S. 445 (1930) ; *Commissioner* v. *Winthrop*, 98 F. 2d 74 (C.A. 2, 1938), affirming 36 B.T.A. 314 (1937), acq. 1940-1 C.B. 5.

*Commissioner* v. *Winthrop, supra*, relied upon by petitioner is clearly distinguishable. In that case, a corporation, pursuant to a plan of liquidation, distributed to each of its stockholders certain bonds and a "liquidation certificate" representing an interest in cash, the only remaining asset retained by it. The bonds had a definite market value and, the value of those received by the taxpayer was several thousand dollars less than the cost basis of his stock. The disbursement to be made against the retained cash for payment of taxes, expenses, and cost of dissolution were known with sufficient certainty to enable determination of the amount to be distributed in final liquidation. Based on such valuation the liquidation certificate received by the taxpayer in 1932 had an estimated value of $900 and that was the amount actually received by him in 1934. It was held that the fact and amount of the taxpayer's loss on his stock was determinable with reasonable certainty in 1932.

The *Winthrop* case was held to be controlling in *Palmer* v. *United States*, an unreported case (D. Conn. 1958, 1 A.F.T.R. 2d 863, 58-1 U.S.T.C. par. 9288). In that case, a corporation contracted to sell all of its assets, except cash, to another corporation and adopted a resolution to liquidate and dissolve. The purchase price was paid, 70 percent in cash and 30 percent in notes secured by a first mortgage on the property sold. The District Court held that the taxpayer sustained a loss in 1952, the year of the sale, since there was no uncertainty as to the amount of cash and the notes, secured by the mortgage, could reasonably be valued at "par." The *Palmer* case is likewise distinguishable from the present case.

In the present case, the Highland Co. was in the process of liquidation but had not been finally and completely liquidated or dissolved as of the end of 1965. It still retained substantial assets, no final liquidating distribution in cash or property had been made as of the end of 1965, and the amount that would eventually be distributed was indefinite and uncertain. The petitioner does not come within any of the recognizable exceptions to the general rule discussed above. We hold that petitioner is not entitled to a capital loss deduction on her Highland Co. stock in 1965, under the provisions of section 331(a) (1).

The fact that petitioner is claiming only the minimum loss which she would sustain on her Highland Co. stock even if the maximum

(face) value of the assets retained by the corporation were realized and distributed, does not justify a different conclusion. The fact remains that the precise amount of the loss which petitioner would sustain on her Highland Co. stock was indefinite and uncertain at the end of 1965, and she is not entitled thus to split her anticipated losses. *Turner Construction Co.* v. *United States, supra; Dresser* v. *United States, supra.* Petitioner has not called our attention to any authorities holding otherwise. As was held by the Supreme Court in *Weiss* v. *Wiener*, 279 U.S. 333 (1929), in order to be deductible a loss "must be actual and present, not merely contemplated as more or less sure to occur in the future."

Alternatively, petitioner contends she is entitled to claim a portion of her loss in 1965 by reason of the partial liquidation of the Highland Co. in that year, under the provisions of sections 331(a)(2) and 346. Section 331(a)(2) provides:

SEC. 331.  GAIN OR LOSS TO SHAREHOLDERS IN CORRPORATE LIQUI-
DATIONS.

(a) GENERAL RULE.—

\*       \*       \*       \*       \*       \*       \*

(2) PARTIAL LIQUIDATIONS.—Amounts distributed in partial liquidation of a corporation (as defined in section 346) shall be treated as in part or full payment in exchange for the stock.

Section 346 provides, in part, as follows:

SEC. 346.  PARTIAL LIQUIDATION DEFINED.

(a) IN GENERAL.—For purpose of this subchapter, a distribution shall be treated as in partial liquidation of a corporation if—

(1) the distribution is one of a series of distributions in redemption of all of the stock of the corporation pursuant to a plan; or

(2) the distribution is not essentially equivalent to a dividend, is in redemption of a part of the stock of the corporation pursuant to a plan, and occurs within the taxable year in which the plan is adopted or within the succeeding taxable year, including (but not limited to) a distribution which meets the requirements of subsection (b).

We agree with petitioner that the distribution which the Highland Co. made, pro rata, to its stockholders in 1965 (of which petitioner received $26,406.51) was a distribution in partial liquidation of the corporation, pursuant to a plan of complete liquidation within the meaning of section 346(a)(1). The question remains, however, since the corporation was not completely liquidated in 1965, whether and to what extent, if any, the petitioner is entitled to recognition of a capital loss on her Highland Co. stock in 1965.

Petitioner cites Rev. Rul. 56–513, 1956–2 C.B. 192, and Rev. Rul. 57–334, 1957–2 C.B. 242, which held that in determining the amount of gain or loss realized in a distribution in partial liquidation under section 346(a) the number of shares *deemed* to have been sur-

rendered, regardless of the actual number of shares surrendered by the stockholders, is that which bears the same ratio to the total number of shares outstanding as the cash distributed bears to the total fair market value of the net assets of the corporation immediately prior to the distribution.

Based upon these rulings petitioner argues that 50.78 percent of the total value of the Highland Co. was liquidated by the $44,000 distribution in 1965 and consequently 50.78 percent of her stock was redeemed by the distribution to her of $26,406.51; that the basis of 50.78 percent of her stock was $31,707.03 and that her capital loss was $5,300.52, of which 50 percent is deductible under section 1202.

Rev. Rul. 56–513 involved a genuine contraction of a corporation's business and a reduction in capital. After disposing of one of two separate businesses, the corporation had an excess of current assets over liabilities in the amount of 600x dollars, considerably in excess of the working capital (200x dollars) required for future operations. As a means of distributing the funds received from the liquidation of the discontinued business, the shareholders adopted a resoluton providing for the redemption, on a prorata basis, of 80 percent of the shares held by the stockholders for a total distribution of 300x dollars and the cancellation of such shares. It was held that the distribution constituted a distribution in partial liquidation under section 346(a) (2) and (b) and that the gain or loss of the stockholders constituted capital gain or loss under the provisions of subchapter P of the Code. The amount of the gain or loss was made to depend, however, upon the number of shares *deemed* to have been surrendered without regard to the actual number surrendered.

Rev. Rul. 56–513 does not explain the reason for relating the stockholders' gain or loss to the number of shares *deemed* to have been surrendered rather than the number actually surrendered. One reason may have been the requirement in section 346(a) (2) that "the distribution is not essentially equivalent to a dividend." Another reason may have been to prevent the possible abuse of the Code provisions relating to partial liquidation and the treatment of capital gains and losses. If permitted to do so without regard for the realities of the situation, the stockholders could by their determination of the number of shares to be redeemed control the amount of gain or loss realized by the stockholders.[3] The ruling contains no discussion of basis.

In any event, neither Rev. Rul. 56–513 nor Rev. Rul. 57–334, which also involved a contraction of corporate business pursuant to a plan of partial liquidation, is, in our opinion, applicable in the present case.

---

[3] See Bittker & Eustice, Federal Income Taxation of Corporations and Stockholders, secs. 7.61, 7.63, and 7.81 (2d ed. 1966) ; 1 Mertens, Law of Federal Income Taxation, sec. 9.70, p. 182 (1969 rev.). Compare *Hyman* v. *Helvering*, 71 F. 2d 342, 344 (C.A.D.C. 1934), affirming 28 B.T.A. 1231, certiorari denied 293 U.S. 570.

The present case does not involve a contraction of corporate business pursuant to a plan of partial liquidation. Here the plan adopted provides for the *complete* liquidation and dissolution of the corporation and the redemption of *all* of the shares. Moreover, the rulings in question involved the distribution of an amount which was definite and certain and in full and complete payment for the shares redeemed. In the present case, the amount which would ultimately be distributed in complete payment in exchange for all of the stock of the corporation was indefinite and uncertain and not reasonably ascertainable as of the end of 1965. Consequently, the precise amount of petitioner's loss on her Highland Co. stock was not determinable as of the end of the taxable year 1965.

The facts of the present case are clearly within the ambit of Rev. Rul. 68–348, 1968–2 C.B. 141, relied upon by respondent. There a corporation adopted a plan of complete liquidation in 1966 and sold all of its assets. It made liquidating distributions to its sole stockholder, a calendar year taxpayer, in 1966 and 1967. The taxpayer had acquired a portion of his stock in 1960 at a cost of 1x dollars per share and the remaining portion in 1963 at a cost of 3x dollars per share. It was held:

The liquidating distributions described above fall within the ambit of section 346(a)(1) of the Internal Revenue Code of 1954 which provides that a distribution will be treated as in partial liquidation of a corporation if it is one of a series of distributions in redemption of all of the stock of a corporation pursuant to a plan of complete liquidation.

Where a shareholder holds a *single block* of stock (namely, a group of shares of the same class of stock acquired in the same transaction at the same cost) and receives a *series of distributions* in complete liquidation of the corporation, the distributions will first be applied against the total adjusted basis of his stock and gain will be recognized only after an amount equal to his adjusted basis has been fully recovered. *Florence M. Quinn*, 35 B.T.A. 412 (1937), acquiescence, C.B. 1937–1, 21; *Arthur Letts, Jr.*, 30 B.T.A. 800 (1934), affirmed on other grounds, 84 F. 2d 760 (1936). However, where a shareholder holds *more than one block* of stock and receives a *single distribution* in complete liquidation of the corporation, the distribution must be allocated ratably among the various blocks of stock. Section 1.331–1(e) of the Income Tax Regulations; *Norman Cooledge*, 40 B.T.A. 110 (1939). Gain or loss must, therefore, be computed separately with respect to each block of stock.

Similarly, where a shareholder owns *more than one block* of stock and receives a *series of distributions* in complete liquidation of the corporation, each distribution must be allocated ratably among the several blocks of stock in the proportion that the number of shares in a particular block bears to the total number of shares outstanding. Gain or loss must be computed separately with respect to each block of stock and gain will be recognized only after the adjusted basis of each block has been recovered. Once the adjusted basis of a specific block of stock has been recovered, all subsequent distributions allocable to that block will be recognized as gain in their entirety.

Any losses resulting from a complete liquidation will be recognized only after

the corporation has made its final distribution. *Dresser et al.* v. *United States*, 55 F.2d 499 (Ct. Cl. 1932), * * * certiorari denied, 287 U.S. 635. * * *

The foregoing principles dealing with complete liquidations pursuant to section 346(a)(1) of the Code apply without regard to whether or not there is a surrender of any stock prior to the final distribution.

[Emphasis supplied.]

Since it was reasonably certain at the end of 1965 that petitioner would receive a further liquidating dividend, she is not entitled to a loss deduction on her Highland Co. stock for the taxable year 1965.

We further agree with respondent's contention, on opening brief, that petitioner is not entitled to a capital loss deduction on her Highland Co. stock for the taxable year 1965 under the provisions of section 165. Section 165 provides in general for the deduction of losses sustained during the taxable year and not compensated for by insurance or otherwise. As previously noted herein, in general such a loss "must be actual and present, not merely contemplated as more or less sure to occur in the future." *Weiss* v. *Wiener, supra; Lucas* v. *American Code Co., supra.* The Income Tax Regulations, sec. 1.165–1(b) and (d)(1), provide that to be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions fixed by identifiable events, and actually sustained during the taxable year; section 1.165–4(a) of the regulations provides that a mere shrinkage in the value of stock owned by the taxpayer, even though extensive, does not give rise to a deduction under section 165(a) if the stock has any recognizable value on the date claimed as the date of loss.

Petitioner's stock was clearly not "worthless," sec. 165(g), and, since the liquidation of the Highland Co. had not been completed and final distribution made of its assets in cash or property, there was no completed "sale or exchange" of such stock within the meaning of section 165(f), as of the end of 1965.

For the reasons hereinabove discussed, we hold that petitioner is not entitled to a capital loss deduction for the taxable year 1965 on the stock which she owned in the Highland Co.

*Decision will be entered for the respondent.*